337

**(UNREDACTED)**

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

----------------------------------------------------

UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
          VS.                    )   NO. 13-20067
                                 )
ROBERT DREW,                     )
                                 )
            Defendant.           )

----------------------------------------------------


TRIAL PROCEEDINGS

BEFORE THE HONORABLE JOHN T. FOWLKES, JR., JUDGE

WEDNESDAY AFTERNOON

APRIL 23, 2014

THURSDAY MORNING

APRIL 24, 2014




LYNN DUDLEY
OFFICIAL REPORTER
923-A FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103

338

A P P E A R A N C E S

Appearing on behalf of the Plaintiff:

        EDWARD L. STANTON, ESQ.
        UNITED STATES ATTORNEY
        SUITE 800
        167 NORTH MAIN STREET
        MEMPHIS, TENNESSEE 38103
        BY:  C. DAVID BIGGERS, JR.
            SAMUEL R. STRINGFELLOW
            ASSISTANT U. S. ATTORNEYS


Appearing on behalf of the Defendant:

        DORIS RANDLE-HOLT
        FEDERAL PUBLIC DEFENDER
        200 JEFFERSON AVENUE
        SUITE 200
        MEMPHIS, TENNESSEE 38103
        BY:  MARY C. JERMANN-ROBINSON
            NEDDUM L. GERMANY, III
            ASSISTANT FEDERAL DEFENDERS

339

# **W I T N E S S   I N D E X**

| **WITNESS** | **PAGE** | **LINE** |
| --- | --- | --- |

GEORGE HERBERT

    DIRECT EXAMINATION

    BY MR. STRINGFELLOW  ...........345          6

MURRAY WILSON

    DIRECT EXAMINATION

    BY MR. BIGGERS  ...............353          6

    CROSS EXAMINATION

    BY MS. JERMANN-ROBINSON  .......359         12

TONY COX

    DIRECT EXAMINATION

    BY MR. BIGGERS  ...............361          6

    CROSS EXAMINATION

    BY MS. JERMANN-ROBINSON  .......382          3

BRIAN WEAKS

    DIRECT EXAMINATION

    BY MR. BIGGERS  ...............384          6

ROBERT DREW

    DIRECT EXAMINATION

    BY MS. JERMANN-ROBINSON  .......405          6

340

## W I T N E S S   I N D E X

| WITNESS | PAGE | LINE |
|---|---|---|

MARVIN PENDER

    DIRECT EXAMINATION

    BY MS. JERMANN-ROBINSON  .......411        6

    CROSS EXAMINATION

    BY MR. BIGGERS  ...............416        20

    REDIRECT EXAMINATION

    BY MS. JERMANN-ROBINSON  .......420        6

CAROL ANN MASON

    DIRECT EXAMINATION

    BY MS. JERMANN-ROBINSON  .......422        6

    CROSS EXAMINATION

    BY MR. BIGGERS  ...............424        14

    REDIRECT EXAMINATION

    BY MS. JERMANN-ROBINSON  .......427        22

    REDIRECT EXAMINATION

    BY MR. BIGGERS  ...............428        14

341

**E X H I B I T   I N D E X**

| EXHIBIT NUMBER | | PAGE | LINE |
|---|---|---|---|
| Exhibit Number 32 | Photographs  ...372 | | 11 |
| Exhibit Number 33 | Stipulation  ...391 | | 9 |
| Exhibit Number 34 | Chronology  ....415 | | 10 |

1                      **WEDNESDAY AFTERNOON**

2                        **APRIL 23, 2014**

3            The trial of this case resumed on this

4    date, Wednesday, April 23, 2014, at 1:15 o'clock

5    p.m., when and where evidence was introduced and

6    proceedings were had as follows:

7

8                  ------------------------

9

10           **THE COURT:**  All right.  All the jurors

11   here?

12           **THE CLERK:**  Yes, sir.

13           **THE COURT:**  Okay.  Anything before we get

14   back to the jury?

15           **MR. BIGGERS:**  Your Honor, these next three

16   witnesses it will require the lights be dimmed for a

17   portion of their testimony.

18           **THE COURT:**  All right.  I will give them a

19   heads up on that, it's not a power outrage or

20   anything like that.

21           **MR. BIGGERS:**  And I hope they don't fall

22   asleep after their lunch.

23           **THE COURT:**  All right.  Are we ready?

24           **MS. JERMANN-ROBINSON:**  Yes, Your Honor.

25           **THE COURT:**  All right.  Bring them in,

1    please.

2              (Jury present at 1:30 p.m.)

3         **THE COURT:**  All right.  Good afternoon,

4    ladies and gentlemen.

5         **A JUROR:**  Good afternoon.

6         **THE COURT:**  I hope lunch was good, don't

7    fall asleep now or anything like that.

8              I do want to alert you to one thing that

9    the next couple of witnesses, there's been a request

10   to dim the lights when we look at some of these

11   videos.  It may help to bring things in better

12   focus, I don't know, something with the light.

13             So the way it will look in here as though

14   court is closed.  You see when court is closed, all

15   of these lights are out with the exception of, I

16   think, one back there by the back door and maybe one

17   or two up here, and so it will be fairly dark in

18   here.  It won't be pitch dark, but don't be alarmed,

19   it's not power outage or anything when they dim the

20   lights.  Okay.

21             With that being said, I think we can move

22   forward now.

23             And, Mr. Stringfellow, if you would,

24   please, call your next witness.

25        **MR. STRINGFELLOW:**  The government calls

1    Officer George Herbert.

2            **THE COURT:**  All right.  You are good right

3    there.

4            If you would, please, raise your right

5    hand.

6            Do you solemnly swear or affirm, under the

7    penalties of perjury, the testimony that you are

8    about to provide the court and jury in the case now

9    on trial to be the truth, the whole truth and

10   nothing but the truth, so help you God?

11           **THE WITNESS:**  I do.

12           **THE COURT:**  Have a seat right here if you

13   would, please.

14

15

16

17

18

19

20

21

22

23

24

25

GEORGE HERBERT – DIRECT

345

1                            **GEORGE HERBERT,**

2   was thereupon called as a witness on behalf of the

3   Plaintiff, and having been first duly sworn,

4   was examined and testified as follows:

5                     **DIRECT EXAMINATION**

6   **BY MR. STRINGFELLOW:**

7   **Q.**     State and spell your name for the record.

8   **A.**     Detective George Herbert, H-e-r-b-e-r-t.

9   **Q.**     Detective Herbert, you work for the Memphis

10  Police Department?

11  **A.**     I do.

12  **Q.**     What do you do?

13  **A.**     Right now I'm a detective with Old Allen

14  Station General Investigations Bureau.

15  **Q.**     And how long have you worked with the Memphis

16  Police Department?

17  **A.**     All total, 20 years.

18  **Q.**     Were you working for the Memphis Police

19  Department in December 7th, 2012?

20  **A.**     Yes, I was.

21  **Q.**     Were you assigned to a different area within

22  the Memphis Police Department that day?

23  **A.**     Yes, I was in uniform patrol.

24  **Q.**     Now what does uniform patrol do?

25  **A.**     Uniform patrol responds to calls for

GEORGE HERBERT - DIRECT

346

1    domestics, burglaries, robberies.

2    **Q.**    On December 7th, 2012, did you respond to a

3    robbery in progress at the KFC on Highway 64?

4    **A.**    Yes, I did.

5    **Q.**    I'm showing you what's been previously

6    admitted into evidence as Exhibit 30.

7         Do you recognize that?

8    **A.**    Yes, I do.

9    **Q.**    Is that the KFC that the robbery in progress

10   came from?

11   **A.**    Yes, it is.

12   **Q.**    When you arrived at the KFC, what did you do?

13   **A.**    We secured the scene and made contact with

14   the cashier that was working the counter.

15   **Q.**    And generally speaking, when you all respond

16   to robberies in progress, what type of information

17   are you all looking to collect?

18   **A.**    The first thing we want to know is if the

19   scene is secure and if the suspect is still on the

20   scene.  And in this incident he was not.

21   **Q.**    Were you all able to -- did you speak with

22   the victim?

23   **A.**    I did not, my partner did.

24   **Q.**    What did you do?

25   **A.**    I went inside and made contact with the

GEORGE HERBERT - DIRECT

1    manager and watched the security surveillance video.

2    **Q.**     Do you know if a description of the suspect

3    was broadcast out?

4    **A.**     Yes, it was.

5    **Q.**     How do you know that?

6    **A.**     I heard it over my radio, my partner put it

7    out.

8    **Q.**     What -- what was the description that was

9    broadcast out?

10   **A.**     Male black, dark blue hoody, faded bluejeans,

11   wearing a dark colored puffy jacket, armed with a

12   handgun.

13   **Q.**     When you were meeting with the manager, did

14   you then watch the video?

15   **A.**     Yes, I did.

16   **Q.**     What did it show in the video?

17   **A.**     The individual came in through the west door,

18   approached the counter, pointed a gun at the clerk.

19   He saw the clerk backup away from the counter.  The

20   individual stood at the counter for a few minutes

21   with the gun, put his left hand on the counter and

22   leaned forward, then he backed off and went back out

23   the west door.

24   **Q.**     I'm now going to show you what has been

25   previously admitted into evidence as Exhibit 31, the

1    KFC video.

2                        (Videotape playing.)

3    **BY MR. STRINGFELLOW:**

4    **Q.**     Do you recognize the individual on the left

5    side of that video?

6    **A.**     Yes, I do.

7    **Q.**     Who is that?

8    **A.**     That is Mr. Baker.

9    **Q.**     Was he the victim --

10   **A.**     He was the --

11   **Q.**     -- of the attempted robbery?

12   **A.**     -- he was the clerk at the cashier.

13   **Q.**     And the individual on the right, is that the

14   suspect of the attempted robbery?

15   **A.**     Yes, it is.

16   **Q.**     Would you please, using the screen in front

17   of you, circle what appears to be a gun?

18   **A.**     Right there (indicating).

19   **Q.**     And would you also draw a circle around what

20   you described as a dark colored jacket.

21   **A.**     (Indicating).

22   **Q.**     Officer Herbert, was there anything

23   inconsistent with what the victim told you and what

24   you saw in the video?

25   **A.**     Yes.

GEORGE HERBERT - DIRECT

349

1    **Q.**    What was that?

2    **A.**    The color of the weapon.

3    **Q.**    After you watched this video and secured the

4    scene, what did you then do?

5    **A.**    I completed the incident report on the PDA or

6    the handheld computer.

7    **Q.**    And did you leave?

8    **A.**    Not right away.  Sergeant Murry Wilson, from

9    felony response, made the scene and also my

10   lieutenant.

11   **Q.**    What is felony response?

12   **A.**    Felony response handles all felony situations

13   that happen after hours.  They will be the initial

14   officers that make the scene of homicides that

15   happen at night, robberies, burglaries, any --

16   anything where somebody is a violent crime or

17   somebody was taken into custody.

18        And then once they did their initial

19   investigation, they pass it back to the appropriate

20   bureau that works day shift and they handle it.

21   **Q.**    So when Sergeant Wilson arrived, was that the

22   end of your role in this investigation?

23   **A.**    After submitting the report into the

24   computer, yes.

25   **Q.**    Do you know if any fingerprints were taken

GEORGE HERBERT - DIRECT

350

1   from the KFC?

2   **A.**     No, sir, no prints were taken.

3   **Q.**     And why was that?

4   **A.**     The individual was wearing gloves.

5   **Q.**     Did you observe that in one of the videos?

6   **A.**     Yes.

7   **Q.**     I'm now going to show the second angle on

8   what's been previously admitted into evidence as

9   Exhibit 31, the KFC video.

10          Officer Herbert, is that -- the door right

11   there, is that the west side exit that you mentioned

12   earlier?

13   **A.**     Yes, sir.

14                    (Videotape playing.)

15   **BY MR. STRINGFELLOW:**

16   **Q.**     And is that the robber that we saw on the

17   other video?

18   **A.**     Yes, it is.

19   **Q.**     Office Herbert, when you watch the videos,

20   does it appears that the suspect was wearing a mask?

21   **A.**     Yes, it does.

22   **Q.**     Now I'm going to ask if you can see where he

23   is wearing a glove in this video?

24          Will you please circle what you thought was a

25   glove.

1    **A.**      (Indicating).

2            **MR. STRINGFELLOW:**   Your Honor, may I

3    confer with cocounsel?

4            **THE COURT:**   Go ahead.

5            **MR. STRINGFELLOW:**   That's all the

6    questions that I have for Detective Herbert.

7            Thank you.

8            **THE COURT:**   Thank you.

9            And is there cross?

10           **MS. JERMANN-ROBINSON:**   One moment, please.

11           **THE COURT:**   Uh-huh.

12           **MS. JERMANN-ROBINSON:**   Your Honor no

13   questions.

14           Thank you.

15           **THE COURT:**   All right, thank you.

16           Detective Herbert, thank you very much.

17   You can step down, you are excused.

18           **THE WITNESS:**   Thank you.

19                   (Witness excused.)

20           **THE COURT:**   Call your next witness.

21           **MR. BIGGERS:**   The government calls

22   Sergeant Wilson to the witness stand, Your Honor.

23           **THE COURT:**   Okay.  You are good right

24   there.

25           Raise your right hand.

1          Do you solemnly swear or affirm, under the

2   penalties of perjury, the testimony that you are

3   about to provide the court and jury in the case now

4   on trial to be the truth, the whole truth and

5   nothing but the truth, so help you God?

6          **THE WITNESS:**  Yes, sir.

7          **THE COURT:**  Have a seat right here if you

8   would, please.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        **MURRAY WILSON,**

2    was thereupon called as a witness on behalf of the

3    Plaintiff, and having been first duly sworn,

4    was examined and testified as follows:

5                      **DIRECT EXAMINATION**

6    **BY MR. BIGGERS:**

7    **Q.**      Good afternoon.

8    **A.**      Good afternoon.

9    **Q.**      Please state and spell your name for the

10   record.

11   **A.**      It's Murray Wilson.  M-u-r-r-a-y,

12   W-i-l-s-o-n.

13   **Q.**      Where are you currently employed?

14   **A.**      The Memphis Police Department.

15   **Q.**      How long have you been with the MPD?

16   **A.**      A little over 21 years.

17   **Q.**      What position do you currently hold with MPD?

18   **A.**      I am a sergeant with the felony in response

19   unit.

20   **Q.**      Briefly describe the function and duty of a

21   felony in response detective?

22   **A.**      Felony in response, we handle after hours

23   investigation, any felony investigation that

24   requires us making the scene that occurs between

25   four and midnight, that's what we do, we make the

MURRAY WILSON - DIRECT

354

1   scene or they bring them to us.  Just anything that

2   requires investigation.

3   **Q.**     Now were you in this position in December of

4   2012?

5   **A.**     I was.

6   **Q.**     Specifically were you working the evening of

7   December 7th, 2012?

8   **A.**     Yes, I was.

9   **Q.**     Did you receive a call to respond to an

10  attempted robbery at the KFC or Kentucky Fried

11  Chicken located at 8995 Highway 64?

12  **A.**     I was.

13  **Q.**     Approximately what time did you receive that

14  call?

15  **A.**     I received the call around 9:30, 9:45 that

16  evening.

17  **Q.**     Did you, in fact, respond to the scene?

18  **A.**     I did.

19  **Q.**     By the time that you had arrived to the scene

20  had other offices already made the scene and secured

21  it?

22  **A.**     Yes, there was two uniform patrol officers on

23  the scene when I arrived.

24  **Q.**     Who were those uniform patrol officer?

25  **A.**     Officer Herbert and I believe Stewart, and I

MURRAY WILSON - DIRECT

1    believe Lieutenant Glass was on the scene as well.

2    **Q.**    Was Lieutenant Glass the lieutenant for

3    officers Herbert and Stewart?

4    **A.**    Yes, she was.

5    **Q.**    When you make the scene as part of felony

6    response, what's your objective, what's your point

7    of coming to the scene?

8    **A.**    First of all to determine if a crime had

9    occurred, what investigation, if any, is necessary

10   to take statements, if necessary, and also be

11   responsible for calling the crime scene if

12   necessary.

13   **Q.**    In this particular case did you have an

14   opportunity the speak to any victim?

15   **A.**    I did.

16   **Q.**    Who did you speak to?

17   **A.**    I spoke with the cashier that was working

18   that day, I believe a Mr. Baker.

19   **Q.**    You obtained a suspect description from

20   Mr. Baker?

21   **A.**    I did.

22   **Q.**    All right.  Did you review any other evidence

23   while on the scene?

24   **A.**    I did.  I went in with the manager and also

25   with the lieutenant on the scene and viewed the

MURRAY WILSON - DIRECT

356

1    video.

2    **Q.**    You motioned at the scene, is this -- do you

3    recognize what is depicted --

4    **A.**    Yes --

5    **Q.**    -- on the television screen in front of you?

6    **A.**    This is an accurate depiction of the video

7    that I watched, yes.

8    **Q.**    From that description that you saw on the

9    video, was the clothing description consistent with

10   what the victim told you?

11   **A.**    It was slightly different.  He told me the

12   suspect was wearing what he appeared to be, to him,

13   was a bubble coat.  And upon watching -- looking at

14   the video it didn't appear to us it was.

15   **Q.**    Did you receive a description of the firearm?

16   **A.**    Yes.  He told me -- he told me that it was a

17   silver handgun.  Which, upon reviewing the video, it

18   appeared to be black.

19   **Q.**    Please play the first clip.

20          While it is being pulled up.

21          At the time you arrived on the scene had a

22   suspect or person been identified as the robber?

23   **A.**    Identified, no, just had a description of an

24   individual.

25   **Q.**    Was anyone able to provide you any

MURRAY WILSON - DIRECT

357

1  information as to how that person left the scene?

2  **A.**     Other than he left on foot towards the

3  Circle K.

4  **Q.**     From your review of the video could you tell

5  whether or not the robbery suspect's face was

6  covered at all?

7  **A.**     It appeared to be, yes.

8  **Q.**     How?

9  **A.**     With a mask.

10 **Q.**     Do you know if any -- you mentioned that

11 crime scene may or may not have been called, do you

12 know if crime screen actually came to this scene?

13 **A.**     No, the crime scene was not called and that

14 was my decision after reviewing the video and the

15 information given to me by the victim, the suspect

16 appeared to be wearing gloves, so there was nothing

17 to process.

18 **Q.**     We're playing this portion of the video.

19              (Videotape playing.)

20 **A.**     That's the suspect walking in the door there.

21 See him producing what looks like a black handgun

22 pointing it at the -- at the victim.

23              And I believe here in a moment he actually

24 cocks, there he is, he's cocking the revolver.  And

25 he reaches over, I guess trying to get into the cash

1    register, but he is unsuccessful.

2    **Q.**      You mentioned that he was wearing gloves,

3    that hand you saw him reach over with, was that one

4    of the gloved hands?

5    **A.**      Yes, sir.

6    **Q.**      Thank you.

7          **MR. BIGGERS:**  Mr. Herrin, you can bring

8    the lights back up.

9    **BY MR. BIGGERS:**

10   **Q.**      Sergeant Wilson, per your investigation on

11   that night, December 7th, 2012, after reviewing this

12   video, were you able to come up with any

13   identification of who this robber was?

14   **A.**      No, sir, nothing other than what we observed

15   on the video.

16   **Q.**      And you do any report in relation to your

17   work on this case?

18   **A.**      I just did a very short supplement.  When I'm

19   done with that, we just do the preliminary

20   investigation, the felony response, and then we turn

21   it over to the appropriate investigating bureau,

22   which at that time was the robbery bureau.

23   **Q.**      And do you know when the robbery bureau would

24   have likely received this case?

25   **A.**      That next morning when they came in to work.

1    **Q.**    And you handled it because you're felony

2    response, you handled things after hours, is that

3    correct?

4    **A.**    That's correct.

5           **MR. BIGGERS:**  No further questions of the

6    witness, Your Honor.

7           **THE COURT:**  All right, thank you.

8           And is there cross?

9           **MS. JERMANN-ROBINSON:**  Thank you, Your

10   Honor.

11                **CROSS EXAMINATION**

12   BY MS. JERMANN-ROBINSON:

13   **Q.**    Sergeant Wilson?

14   **A.**    Yes, ma'am.

15   **Q.**    Okay.  Sergeant Wilson, I just want to make

16   sure I heard right, you said that Mr. Baker told you

17   that it was a puffy jacket or a bubble jacket or

18   something like that?

19   **A.**    Yes, ma'am.

20   **Q.**    Okay.

21          **MS. JERMANN-ROBINSON:**  Nothing further,

22   Your Honor.

23          **THE COURT:**  Thank you.

24          Any redirect?

25          **MR. BIGGERS:**  Nothing of this witness,

1    Your Honor.

2            **THE COURT:**  Okay.  Sergeant, thank you

3    very much, you can step down, you are excused.

4            **THE WITNESS:**  Yes, sir, thank you.

5                    (Witness excused.)

6            **MR. BIGGERS:**  Your Honor, the government

7    calls Sergeant Tony Cox to the witness stand.

8            **THE COURT:**  All right.

9            Okay.  You are good right there.

10           Officer, raise your right hand.

11           Do you solemnly swear or affirm, under the

12   penalties of perjury, the testimony that you are

13   about to provide the court and jury in the case now

14   on trial to be the truth, the whole truth and

15   nothing but the truth, so help you God?

16           **THE WITNESS:**  I do.

17           **THE COURT:**  All right.  Come forward if

18   you would, please, and take the chair right there in

19   the witness stand.

20

21

22

23

24

25

1                            **TONY COX,**

2     was thereupon called as a witness on behalf of the

3     Plaintiff, and having been first duly sworn,

4     was examined and testified as follows:

5                        **DIRECT EXAMINATION**

6     **BY MR. BIGGERS:**

7     **Q.**     Good afternoon.

8     **A.**     Good afternoon.

9     **Q.**     Please state and spell your name in the

10    microphone?

11    **A.**     Sergeant Tony Cox –– T-o-n-y C-o-x.

12    **Q.**     Where are you currently employed?

13    **A.**     Memphis Police Department, Crump GIB.

14    **Q.**     Say Crump GIB.

15    **A.**     Correct.

16    **Q.**     What does that mean?

17    **A.**     That's, GIB stands for General Investigative

18    Bureau.

19    **Q.**     What are your duties in your assignment to

20    the GIB?

21    **A.**     I investigate a number of different crimes.

22    **Q.**     What position do you hold with the Memphis

23    Police Department?

24    **A.**     I'm a sergeant.

25    **Q.**     How long have you been with MPD?

TONY COX - DIRECT

362

1   **A.**      Nineteen years.

2   **Q.**      In December of 2012 what position did you

3   hold with MPD?

4   **A.**      I was a robbery investigator.

5   **Q.**      Were you working specifically -- well, did

6   you learn of a robbery, attempted robbery that

7   occurred at the KFC on Highway 64 on the night of

8   December 7th, 2012.

9   **A.**      I did.

10  **Q.**      All right.  How did you first learn of that

11  robbery?

12  **A.**      I was assigned that case.

13  **Q.**      Do you recall when you were assigned that

14  case?

15  **A.**      It was December the 10th.

16  **Q.**      So a few days after the robbery, is that

17  correct?

18  **A.**      Correct.

19  **Q.**      What -- describe for the ladies and gentlemen

20  of the jury what type of information that you had at

21  your disposal when you were first assigned the case?

22  **A.**      I had the initial report from the uniform

23  patrol, and I had the supplement from felony

24  response.

25  **Q.**      Did you have an opportunity to review that

TONY COX - DIRECT

363

1   information?

2   **A.**      I did.

3   **Q.**      All right.  At the time had a suspect been

4   identified as a person responsible for committing

5   that attempted robbery?

6   **A.**      We had a description of a suspect.

7   **Q.**      Did you know that person's name at that time?

8   **A.**      I did not.

9   **Q.**      What efforts did you do per your

10  investigation to determine the identity of that

11  suspect?

12  **A.**      I -- I basically went to KFC to get a copy of

13  the video, and I spoke with the victim to see

14  what -- what description he could give me or any

15  leads.

16  **Q.**      You say the victim, who did you speak to?

17  **A.**      Jesse -- what is his name -- Jesse Baker.

18  **Q.**      When did you speak to Jesse Baker?

19  **A.**      December the 11th.

20  **Q.**      The following day after being assigned the

21  case?

22  **A.**      Correct.

23  **Q.**      Did you -- were you able to get -- obtain a

24  description from Jesse Baker of the suspect?

25  **A.**      I did.

TONY COX - DIRECT

364

1    **Q.**      All right.  Specifically what clothing did

2    you receive?

3    **A.**      He said the suspect was wearing light

4    bluejeans.  It was a jacket that was light blue and

5    dark blue checkered pattern.  He had -- he was

6    wearing boots, and he was armed with a revolver.

7    **Q.**      During your, I guess, interview and statement

8    that you took from Jesse Baker, did he tell you the

9    color of the firearm?

10   **A.**      I think he said it was silver in color.

11   **Q.**      Did you have an opportunity to actually

12   review the video?

13   **A.**      I did.

14   **Q.**      What color did the firearm appear to be in

15   the video?

16   **A.**      It was black.

17   **Q.**      After you obtained the video from the KFC and

18   spoke to Mr. Baker, did you do anything else per

19   your investigation?

20   **A.**      Could you repeat that?

21   **Q.**      Specifically on December 11th --

22   **A.**      Uh-huh.

23   **Q.**      -- did you receive any additional information

24   regarding --

25   **A.**      I --

TONY COX - DIRECT

365

1    **Q.**      -- your investigation?

2    **A.**      -- I did.  I -- I received a call from

3    Sergeant Atkins with the Oakland Police Department.

4    **Q.**      What was the nature of that conversation?

5    **A.**      Basically he, to my understanding, was aware

6    of an attempt robbery that happened at that KFC and

7    he was doing a follow-up with me in regards to that

8    robbery.

9    **Q.**      You say he was aware of a robbery, was that

10   the same robbery that you were assigned?

11   **A.**      Correct.

12   **Q.**      What, if any, information did you request

13   from Sergeant Atkins?

14   **A.**      I requested the name of the suspect that he

15   had, the clothing description or whatever, you know,

16   whatever information he could provide to me.

17   **Q.**      Was he able to provide you with any

18   information?

19   **A.**      He was.

20   **Q.**      What did he provide you with?

21   **A.**      He provided me with photos of the clothing

22   that that suspect that he in custody was wearing

23   that night that he was arrested as well as the --

24   the weapon.

25   **Q.**      Now I'm going to show you clothing.

TONY COX - DIRECT

366

1           This is Exhibit 29.

2           You recognize those photographs?

3   **A.**    I do.

4   **Q.**    Speaks into the mic, please.

5   **A.**    I do.

6   **Q.**    What are those photographs of?

7   **A.**    That is a photograph of the jacket that

8   Mr. Robert Drew was wearing apparently that night.

9   **Q.**    Now you say "apparently," let me ask you

10  specifically.

11          These photographs, do you know or have you

12  seen them before?

13  **A.**    I have.

14  **Q.**    Where did you see them?

15  **A.**    They -- they were photos sent to me by the

16  Oakland Police Department as well as from the video

17  that I viewed from my robbery.

18  **Q.**    You're talking about the KFC robbery?

19  **A.**    That's correct.

20  **Q.**    These are the photographs that Sergeant

21  Atkins sent you?

22  **A.**    Correct.

23  **Q.**    Is that consistent with what you saw in the

24  video?

25  **A.**    It is.

1    **Q.**      How?

2    **A.**      Well, the -- it's a light blue and dark blue

3    checkered pattern jacket with a hood.

4    **Q.**      What color is the hood?

5    **A.**      The hood is black.

6    **Q.**      Anything else unique about this jacket?

7    **A.**      It had a logo on the left -- the left pocket.

8    **Q.**      Please circle what you are referring to.

9    **A.**      (Indicating).

10   **Q.**      Second page of Exhibit 29.

11           Do you recognize that?

12   **A.**      I do.

13   **Q.**      What is that?

14   **A.**      Those were the jeans, photo of jeans that

15   were sent from what Mr. Drew was wearing.

16   **Q.**      This is also what you received from Sergeant

17   Atkins, is that correct?

18   **A.**      That's correct.

19   **Q.**      Those jeans consistent with what you saw in

20   your KFC robbery video?

21   **A.**      They were.

22   **Q.**      Third page of Exhibit 29.

23           You recognize that?

24   **A.**      I do.

25   **Q.**      What is that?

TONY COX - DIRECT

368

1   **A.**      That's a ski mask that my suspect was

2   wearing.

3   **Q.**      Now where did you get these photographs?

4   **A.**      From Detective Atkins.

5   **Q.**      You say "ski mask," clearly it's a hat, is

6   that correct?

7   **A.**      Correct.

8   **Q.**      Do you see any eyeholes in that hat?

9   **A.**      I do.

10  **Q.**      Now a ski mask, if you buy a ski mask the

11  holes are manufactured, come manufactured in the

12  mask, is that correct?

13  **A.**      That's correct.

14  **Q.**      Was that the way this mask was?

15  **A.**      No, it wasn't.

16  **Q.**      Do you recognize the fourth page of

17  Exhibit 29?

18  **A.**      I do.

19  **Q.**      What is that?

20  **A.**      That is the thermal, white thermal shirt that

21  was sent to me by Detective Atkins that Mr. Drew

22  apparently was wearing.

23  **Q.**      You say a "thermal shirt," the photograph of

24  the shirt, is that correct?

25  **A.**      Correct.

TONY COX - DIRECT

369

**Q.**     Was it consistent with your robbery suspect
at all?

**A.**     It was.  My robbery suspect did have -- I
could tell that he had a light shirt on up under
the -- the coat that he was wearing.

**Q.**     Another page of Exhibit 29.

      Do you recognize those?

**A.**     Correct.

**Q.**     What are those?

**A.**     Those are gloves.

**Q.**     All right.  Was your robbery suspect wearing
gloves?

**A.**     He was.

**Q.**     Are those consistent with the gloves that you
saw in your video?

**A.**     It is.

**Q.**     Do you recognize that?

**A.**     I do.

**Q.**     Another photograph of Exhibit 29.

      What are those?

**A.**     Those are the boots that -- a photograph of
the boots that were collected from Mr. Drew.

**Q.**     Your robbery suspect, do you recall what type
of shoes he was wearing?

**A.**     He was wearing some -- some boots like that.

TONY COX - DIRECT

1    **Q.**      Another page from Exhibit 29.

2            Do you recognize that?

3    **A.**      I do.

4    **Q.**      What is that?

5    **A.**      That's the revolver, a picture of the

6    revolver that was collected from Mr. Drew.

7    **Q.**      Also consistent with the revolver used in

8    your robbery?

9    **A.**      It is.

10   **Q.**      Now do you recall if Sergeant Atkins provided

11   you with any photographs of their robbery suspect?

12   **A.**      He did.

13   **Q.**      Another page from Exhibit 29.

14           Do you recognize that?

15   **A.**      I do.

16   **Q.**      What is that?

17   **A.**      That's a photograph of the robbery suspect in

18   their robbery in Oakland apparently.

19   **Q.**      And do you see any of the clothing items that

20   you saw identified in the other photographs on this

21   picture?

22   **A.**      I do.

23   **Q.**      Please name them and circle them?

24   **A.**      Okay.  This is the ski mask, the jacket, the

25   white shirt that I was referring to, the revolver

TONY COX - DIRECT

371

1    and the jacket has the logo right here (indicating).

2  **Q.**    All right.  Last picture from Exhibit 29.

3         Same thing, do you recognize this photograph?

4  **A.**    I do.

5  **Q.**    What's shown there?

6  **A.**    This is the revolver, the white shirt, the

7    jacket, gloves -- glove I should say (indicating).

8  **Q.**    Only one glove in this photograph, is that

9    correct?

10 **A.**    Correct.

11 **Q.**    Which robbery -- which robbery is this

12   photograph from?

13 **A.**    This is the photograph from the Oakland

14   robbery.

15 **Q.**    This is the photograph that was provided to

16   you by Sergeant Atkins?

17 **A.**    Correct.

18 **Q.**    Showing you three photographs.

19        Tell me if you recognize those photographs?

20 **A.**    I do.

21 **Q.**    What are those three photographs of?

22 **A.**    These are the photographs of the KFC robbery

23   and I think it's 8995 Highway 64.

24 **Q.**    Do all three of those photographs accurately

25   depict what is displayed on the robbery during that

TONY COX - DIRECT

372

1    robbery?

2    **A.**      Correct.

3              **MR. BIGGERS:**  At this time the government

4    moves to admit all three photographs.

5              **THE COURT:**  All right.  I believe next is

6    number 32?

7              **THE CLERK:**  Yes.

8              **THE COURT:**  All right.  We will introduce

9    them, be collective, three photographs will be

10   Exhibit 32.

11             (Exhibit Number 32 was marked;

12   Description:  Photographs.)

13   **BY MR. BIGGERS:**

14   **Q.**      Now, Sergeant Cox, you just reviewed for the

15   ladies and gentlemen of the jury the consistency

16   with the clothing items that were photographed and

17   sent to you by Sergeant Atkins and that worn by the

18   robbery suspect in the Oakland robbery.  I'm about

19   to show you these still shots that you just

20   identified from the KFC robbery that also occurred

21   on December 7th, 2012 and I want you to point out

22   the consistency of these photos for the ladies and

23   gentlemen of the jury.  Okay.

24   **A.**      Yes.

25   **Q.**      Okay.  First picture in collective

TONY COX - DIRECT

373

1   Exhibit 32.

2        What consistencies do you see in that?

3   **A.**    Well, he's wearing a ski mask here

4   (indicating) with a hood on this jacket which is

5   light complexion -- I mean, light blue, dark blue

6   checkered board pattern.

7        He's wearing a glove here (indicating) with

8   the light bluejeans.

9        Can't really show you -- see the boots from

10  here, but also he has a white shirt up under that

11  jacket.

12  **Q.**    Do you notice the emblem that you identified

13  on the other photographs on this exhibit?

14  **A.**    There it is right there (indicating).

15  **Q.**    Second page of Exhibit 32.

16       Now in this exhibit are you able to see any

17  of those items that were photographed and sent to

18  you?

19  **A.**    I can tell that there is the white shirt

20  sleeve.  He has the handgun here (indicating), that

21  same jacket on, ski mask.

22            **MR. BIGGERS:**  All right.  Your Honor, at

23  this time ask Mr. Herrin to please dim the lights

24  and go to the video.

25            Now play the second video.

TONY COX - DIRECT

374

1                    (Videotape playing.)

2    **BY MR. BIGGERS:**

3    **Q.**    Now this video plays, Sergeant Cox, I'm going

4    to ask special agent, pause it right there.

5         I want you to describe the clothing or any

6    other consistent clothing worn by the KFC robbery

7    suspect's clothing?

8    **A.**    These are the boots that were consistent with

9    the photos that was sent to me by Detective Atkins,

10   the light bluejeans, the jacket that has a hood, and

11   the ski mask.

12   **Q.**    Do you also see the shirt in that --

13   **A.**    Shirt --

14   **Q.**    -- image?

15   **A.**    -- shirt sleeve right there.

16   **Q.**    Were you able to tell how this suspect left

17   the store?

18   **A.**    Well, he left out of the same door he came

19   in.  So I would say that's probably, I don't know --

20   I don't know the exact direction so I don't want to

21   say.

22   **Q.**    Did he leave on foot?

23   **A.**    Yes, he did leave on foot.

24   **Q.**    Where did he go once he walked out of the

25   store?

TONY COX - DIRECT

375

1   **A.**      He went -- he went next door, which is the

2   Circle K.

3   **Q.**      Do you recognize what's shown on the photo

4   here, image on the screen?

5   **A.**      It appears to be the parking lot of the KFC.

6   **Q.**      And which way does that KFC face --

7   **A.**      It --

8   **Q.**      -- well, not direction, but what's -- what's

9   in front of it?

10  **A.**      The highway, Highway 64.

11  **Q.**      Do you see Highway 64 on that --

12  **A.**      I do.

13  **Q.**      Where is that?

14          Please make an X on Highway 64.

15  **A.**      (Indicating).

16  **Q.**      All right.  Give me full screen, please.

17          Okay.  Okay.  Play it?

18  **A.**      Oh, I'm sorry, that looks like the Circle K

19  there.

20  **Q.**      All right.

21  **A.**      Because I can see the -- so apparently

22  Highway 64 has to be right there, I believe

23  (indicating).

24  **Q.**      Okay.  Hit play.

25          (Videotape playing.)

TONY COX - DIRECT

376

1    **BY MR. BIGGERS:**

2    **Q.**    Who is that walking up from the X?

3    **A.**    That's my robbery suspect.

4    **Q.**    What -- you see a door there, where did he

5    just go?

6    **A.**    He went in the side entrance to the KFC.

7    **Q.**    I see lights flashing in that area where you

8    drew the X, what is that?

9    **A.**    Those are passing vehicles.

10   **Q.**    Is that Highway 64?

11   **A.**    That is.

12   **Q.**    You see someone come out of that door --

13   **A.**    I did.

14   **Q.**    -- who was that?

15   **A.**    That's robbery suspect.

16   **Q.**    And where is he going?

17   **A.**    He fled and went towards the -- the Circle K.

18   **Q.**    Okay.  Again, where is the Circle K?

19   **A.**    (Indicating).

20   **Q.**    Now on that video did he run toward the

21   Circle K or towards the Highway 64?

22   **A.**    Well, he ran towards Highway 64 in the

23   direction towards Circle K.

24   **Q.**    Pause it for me.

25          Now right here next to the Circle, between

1   the Circle K and the KFC, is that a wall or do you

2   know?

3   **A.**    I don't recall whether there was a wall or

4   not.  It looks like it may be though.

5   **Q.**    Okay.  Now from the time you received that

6   information from the Oakland Police Department, what

7   did you do with that information?

8   **A.**    When I received that information, basically I

9   started trying to get them to send me some -- more

10   detailed information and pictures of the suspect so

11   I could kind of compare it with the video.

12   **Q.**    And is that what you just reviewed in the

13   court as far as the clothing that you compared

14   between the two suspects?

15   **A.**    I -- correct.

16   **Q.**    Once you made that comparison, what

17   determination did you come to?

18   **A.**    I made the determination that it was in all

19   likely probable hood that that was the same suspect

20   based on the clothing description.

21   **Q.**    Lights.

22          Anything unique about the jeans?

23   **A.**    They had -- they were light in color but it

24   seems like the thigh area of the jeans were kind of

25   faded or worn.

TONY COX - DIRECT

378

1    **Q.**    Showing you Exhibit 27, been admitted, the

2    jeans worn by the defendant Robert Drew.

3         Do you see that worn thigh area, that you

4    just testified to, on these jeans?

5    **A.**    I do.

6    **Q.**    Showing you what's been admitted as Exhibit

7    10.

8         Do you recognize this?

9    **A.**    I do.

10   **Q.**    What is that?

11   **A.**    That's the jacket that the suspect was

12   wearing.

13   **Q.**    When you say "the suspect," which suspect are

14   you referring to?

15   **A.**    Robert Drew.

16   **Q.**    Okay.  Was that based --

17   **A.**    Well, the suspect at the KFC, that -- that

18   robber that attempted to rob the KFC.

19   **Q.**    And this consistent with the photograph sent

20   to you by the Oakland Police Department?

21   **A.**    It is.

22   **Q.**    Do you see that emblem that you made

23   reference to?

24   **A.**    I do.

25   **Q.**    Where is it, describe its location?

TONY COX - DIRECT

379

1    **A.**      It's on the left pocket.

2    **Q.**      Is this it (indicating)?

3    **A.**      It is.

4    **Q.**      You described a shirt, undershirt.

5            Show you what's been marked and admitted as

6    Exhibit 28.

7            Recognize that?

8    **A.**      I do.

9    **Q.**      What is that?

10   **A.**      That's the thermal, white thermal shirt that

11   was in -- in the photo of the robbery at the KFC.

12   **Q.**      And these are the sleeve -- the sleeves in

13   this shirt is what you identified during the video,

14   is that correct?

15   **A.**      That's correct.

16   **Q.**      Once you made this comparison to determine it

17   was the same robber, what action did you take to

18   follow-up?

19   **A.**      I -- I called Detective Atkins and see --

20   attempted to try to set up an appointment so I could

21   do an interview with Mr. Drew.

22   **Q.**      Did you have an occasion to speak to the

23   person that you described as Robert Drew?

24   **A.**      I did.

25   **Q.**      Did you see him?

TONY COX - DIRECT

380

1    **A.**      Do I see him now?

2    **Q.**      Did you see when you --

3    **A.**      I did --

4    **Q.**      -- talked to him?

5    **A.**      -- I did.

6    **Q.**      The person you've described as Robert Drew,

7    do you see him in the courtroom today?

8    **A.**      I do.

9    **Q.**      Please point to him and describe the clothing

10   he's wearing?

11   **A.**      He's wearing a white shirt with black and

12   maybe green polo-type shirt sitting at the table

13   right near the TV screen.

14            **MR. BIGGERS:**  Your Honor, ask that the

15   record reflect that he has identified the defendant.

16            **THE COURT:**  The record will reflect it.

17   **BY MR. BIGGERS:**

18   **Q.**      During that conversation did you ask Mr. Drew

19   about the KFC robbery?

20   **A.**      I did.

21   **Q.**      What, if any, information did she give you?

22   **A.**      He basically told me that he was never in

23   Memphis.  And he basically had -- he was with

24   relatives of his, and, you know, I could verify that

25   information with them.

1    **Q.**    Did you ask him about the clothing that he

2    wore?

3    **A.**    I did.  I asked him about the jacket.  And he

4    told me basically it was a -- a jacket that a lot of

5    people could possibly have and he bought it from the

6    Good Will or something that effect.  So it's a very

7    common jacket basically how he put it.

8    **Q.**    That's what he told you?

9    **A.**    Yes.

10    **Q.**    Did that end your investigation on this case?

11    **A.**    It did.

12    **Q.**    Did you attempt to file state attempt robbery

13    charges against the defendant?

14    **A.**    I did not.  I was -- upon request from ATF,

15    they advised me that they were trying to take the

16    case federal, so they asked me not to file state

17    charges on him.

18            **MR. BIGGERS:**  Brief moment, Your Honor.

19            **THE COURT:**  All right.

20            **MR. BIGGERS:**  No further questions at this

21    time, Your Honor.

22            **THE COURT:**  Thank you.

23            And is there cross?

24            **MS. JERMANN-ROBINSON:**  Yes, Your Honor.

25            Thank you.

TONY COX - DIRECT

1          **THE COURT:**  Uh-huh.

2                        **CROSS EXAMINATION**

3    **BY MS. JERMANN-ROBINSON:**

4    **Q.**     Sergeant Cox?

5    **A.**     Yes, ma'am.

6    **Q.**     Mary C. Robinson for Robert Drew.

7            In your investigation of this matter, did

8    you, in fact, review the dispatch, I guess, from

9    when this -- when this robbery at Kentucky Fried

10   Chicken was originally called in?

11   **A.**     Did I review the dispatch?

12   **Q.**     Yes.

13           Did you listen to it?

14   **A.**     No, I didn't.

15   **Q.**     Did you look at the written summary?

16   **A.**     Of the dispatch?

17   **Q.**     Yes.

18   **A.**     No, I didn't.

19   **Q.**     Are you aware that, originally that the

20   broadcast was for a man in a plaid jacket, but then

21   later it was corrected to a man in a bubble jacket?

22   **A.**     No, I'm not aware of that.

23   **Q.**     Not aware of that.

24           **MS. JERMANN-ROBINSON:**  No further

25   questions.

TONY COX – CROSS

383

1           **THE COURT:**  Any redirect?

2           **MR. BIGGERS:**  No, Your Honor.

3           **THE COURT:**  Okay, Sergeant Cox, thank you

4    very much.  You can step down, you are excused.

5                   (Witness excused.)

6           **MR. BIGGERS:**  The government calls special

7    agent Brian Weaks.

8           **THE COURT:**  All right.

9           Okay.  If you would, please -- you are

10   good right there.

11          Raise your right hand.

12          Do you solemnly swear or affirm, under the

13   penalties of perjury, the testimony that you are

14   about to provide the court and jury in the case now

15   on trial to be the truth, the whole truth and

16   nothing but the truth, so help you God?

17          **THE WITNESS:**  Yes, sir.

18          **THE COURT:**  Just have a seat right here,

19   please.

20

21

22

23

24

25

1                      **BRIAN WEAKS,**

2      was thereupon called as a witness on behalf of the

3      Plaintiff, and having been first duly sworn,

4      was examined and testified as follows:

5                      **DIRECT EXAMINATION**

6      **BY MR. BIGGERS:**

7      **Q.**      Good afternoon.

8      **A.**      How are you?

9      **Q.**      Well, how about yourself?

10     **A.**      Well.

11     **Q.**      Please state and spell your name for the

12     record?

13     **A.**      Brian Weaks, B-r-i-a-n, W-e-a-k-s.

14     **Q.**      Special Agent Weaks, tell the ladies and

15     gentlemen where you're employed?

16     **A.**      Bureau of Alcohol, Tobacco, Firearms and

17     Explosives.

18     **Q.**      Specifically what position do you hold with

19     ATF?

20     **A.**      I'm a special agent.

21     **Q.**      How long have you been with ATF?

22     **A.**      Approximately 13 years.

23     **Q.**      Prior to coming to being employed with ATF,

24     did you have any other law enforcement experience?

25     **A.**      Yes.  I was a police officer in

 1  Hendersonville, Tennessee for seven years.

 2  **Q.**      Any other?

 3  **A.**      No, that's all.

 4  **Q.**      In your role with ATF, specifically what --

 5  what are your duties as a special agent?

 6  **A.**      As a special agent my basic duties are to

 7  investigate violations of federal law, primarily

 8  involving firearms, explosives and arsons.

 9  **Q.**      And have you had any specialized training

10  with regard to your unique position with ATF?

11  **A.**      Specialized training in to what I'm going to

12  testify today in the Basic Special Agent Academy

13  that I went to we were taught basic nomenclature of

14  firearms and the workings of different types of

15  firearms.

16          Later in my career I attended ATF's Advanced

17  Interstate Nexus School where we learned much more

18  in-depth nomenclature of firearms, how to look at

19  firearms and read the proof markings on the firearms

20  to determine the origin and manufacturer of that

21  firearm.

22  **Q.**      Special Agent Weaks, bear with me, you

23  said -- you used a lot of words that I'm not

24  familiar with --

25  **A.**      Okay, I'm sorry.

BRIAN WEAKS - DIRECT

386

1   **Q.**      -- I'm not a firearm's expert.

2          Nomenclature and interstate nexus, describe

3   for the ladies and gentlemen of the jury what

4   interstate nexus is?

5   **A.**      Interstate nexus is a very -- it's a big word

6   for something that very basic, it's just anytime

7   something travels across state lines, it then

8   affects interstate nexus or interstate commerce.

9   **Q.**      So when you talked about the training that

10  you received to determine the interstate nexus of a

11  firearm, what specifically were you looking for?

12  **A.**      We're looking for certain proof markings on

13  the firearm that determine -- that show me where the

14  firearm was manufactured.  If a firearm was, in this

15  case, recovered in Tennessee but was manufactured,

16  in this case, Brazil, at that point, at some -- at

17  some point not only crossed interstate lines, but

18  also traveled in foreign commerce.

19  **Q.**      Now in this role with ATF, does it involve

20  other duties that other ATF agents don't have?

21  **A.**      Yes, because I'm specially trained in

22  interstate nexus I look at the guns that are

23  involved in the crimes that our agents investigate

24  and determine whether they affect interstate

25  commerce.

BRIAN WEAKS - DIRECT

387

1  **Q.**     And have you previously testified in federal

2  or state court to this type of information?

3  **A.**     Yes.

4            **MR. BIGGERS:**  Your Honor at this time the

5  government offers Mr. Weaks as a witness with

6  specialized knowledge in the area of interstate

7  nexus.

8            **MS. JERMANN-ROBINSON:**  No objection.

9            **THE COURT:**  An opinion -- as an opinion

10  witness?

11           **MR. BIGGERS:**  Yes, Your Honor.

12           **THE COURT:**  Okay.

13           **MS. JERMANN-ROBINSON:**  No objection.

14           **THE COURT:**  All right, thank you.

15           Ladies and gentlemen, we will receive the

16  special agent as an expert or an opinion witness.

17           What that does is it allows the witness to

18  give his opinion about certain things that may be an

19  issue in the case.

20           I will have a further instruction for you

21  a little more detail when I give you the written

22  instructions at the end of the case.  But some of

23  what he will testify to are his opinions based on

24  his experience and training.

25               You may proceed.

BRIAN WEAKS – DIRECT

388

1          **MR. BIGGERS:**  Thank you, Your Honor.

2     **BY MR. BIGGERS:**

3     **Q.**     Special Agent Weaks, specifically with regard

4     to a case involving Robert Drew, were you asked to

5     do conduct an interstate nexus search on a firearm

6     related to that case.

7     **A.**     Yes, I was.

8     **Q.**     What type of firearm was it?

9     **A.**     It was a Rossi Model 68 .38 caliber revolver.

10    **Q.**     And have you had the opportunity to examine

11    the firearm in this case?

12    **A.**     Yes, I have.

13    **Q.**     Show you what's been marked and admitted as

14    Exhibit 12.  Take a look at that.

15          You recognize it?

16    **A.**     Yes.

17    **Q.**     What do you -- speak into the mic, please.

18          What do you recognize that to be?

19    **A.**     This is the firearm that I examined for this

20    case.

21    **Q.**     How do you know that's the same firearm?

22    **A.**     Due to the serial number of AA803198, the

23    same serial number on the firearm that I examined.

24    **Q.**     Before you get into your actual examination,

25    describe for the ladies and gentlemen of the jury

BRIAN WEAKS - DIRECT

389

1    that actual firearm, it's appearance?

2    **A.**     This is a, again, it's a Rossi .38 caliber

3    revolver snubnose, appears to have a blue finish on

4    it which just means it has a glossier high -- a high

5    gloss finish on it, it's still a black firearm but

6    they put a bluing on it that causes it to have a

7    little bit higher gloss or shine.

8    **Q.**     You used the term "snubnose," what do you

9    mean by that?

10   **A.**     That just has a shorter barrel than some

11   other revolvers have.

12   **Q.**     All right.  Did you actually conduct an

13   interstate nexus search on that firearm?

14   **A.**     I did.

15   **Q.**     Were you able to determine where it was

16   manufactured?

17   **A.**     Yes, I did.

18   **Q.**     Where was it manufactured?

19   **A.**     In Brazil.

20   **Q.**     Were you able to determine from your

21   interstate nexus search how it came to be in the

22   United States?

23   **A.**     That was imported by a company by the name of

24   Interarms out of Alexandria, Virginia.

25   **Q.**     All right.  Now would it definitely be your

1    opinion that -- that exhibit, Exhibit 12, affected

2    or traveled in interstate commerce and that it was

3    recovered here in Memphis, Tennessee, here in the

4    State of Tennessee?

5    **A.**    Yes.  Not only did it affect interstate

6    commerce but it also affected foreign commerce.

7    **Q.**    Thank you, Special Agent Weaks.

8    **A.**    Yes, sir.

9         **MR. BIGGERS:**  No further questions of this

10   witness at this time.

11        **THE COURT:**  Thank you.

12        Is there any cross?

13        **MS. JERMANN-ROBINSON:**  No, no cross.

14        **THE COURT:**  All right, Special Agent

15   Weaks, thank you very much.  You can step down, you

16   are excused.

17             (Witness excused.)

18        **THE COURT:**  Call your next witness.

19        **MR. BIGGERS:**  Your Honor, at this time the

20   government has no further witnesses.  However, I

21   would like to read into the record the stipulation

22   of the parties.

23        **THE COURT:**  All right, stipulation of the

24   parties.

25        Why don't you go ahead and -- let me take

1  a look at it first and then mark it as an exhibit

2  and then you go ahead and present to it the jury.

3          Let me take a look.

4          (Document passed to the court.)

5      **THE COURT:**  Okay, we will go ahead and

6  mark the stipulation as Exhibit Number 33 in the

7  record, I believe that's the next number, 33?

8      **THE CLERK:**  Yes, sir.

9          (Exhibit Number 33 was marked;

10  Description:  Stipulation.)

11     **THE COURT:**  And, ladies and gentlemen, a

12  stipulation, and this is the way they present some

13  information to you, is an agreement between the

14  parties as to something things that are very common

15  and it saves us time in that additional witnesses

16  are not necessary then to prove the information that

17  they're presenting to you by way of this stipulation

18  or agreement.

19          Again, in my written instructions to you

20  at the end of the case, I'll have a section in there

21  about stipulations and how you are to handle that.

22          Mr. Biggers, you may go ahead and proceed.

23     **MR. BIGGERS:**  Thank you, Your Honor.

24          This is the stipulation of the parties in

25  the case of United States of America versus Robert

1    Drew.

2              Comes now the United States of America by

3    and through it's counsel, Edward L. Stanton, III,

4    the United States Attorney for the Western District

5    of Tennessee, and David Biggers, Assistant United

6    States, and the defendant, Robert Drew, by and

7    through his counsel, Mary Jermann-Robinson, and

8    agree and stipulate as follows:

9              Paragraph One.  On December 7th, 2012, the

10   Hickory Center Market, located at 3305 Highway 64,

11   Eads, Tennessee, was in a business engaged in

12   interstate commerce.

13             Paragraph Two.  On December 7th, 2012, the

14   Kentucky Fried Chicken Restaurant, located at 8995

15   Highway 64, Memphis, Tennessee, was then a business

16   engaged in interstate commerce.

17             Paragraph Three.  Prior to December 7th,

18   2012, Robert Drew had been previously convicted of a

19   felony offense, that is, a crime punishable by

20   imprisonment for a term exceeding one year.

21             Accordingly, the parties agree that it

22   will not be necessary for the government to present

23   such evidence to the jury as these facts can be

24   considered proven beyond a reasonable doubt.

25             And it is signed by myself, David Biggers,

1    defense counsel Mary Catherine Jermann-Robinson, and

2    the defendant, Robert Drew, and dated.

3            At this time the government asks the court

4    to take judicial notice that both locations, the

5    Hickory Center Market in Eads, Tennessee, as well as

6    the Kentucky Fried Chicken located in Memphis,

7    Tennessee, are within the Western District of

8    Tennessee.

9            **THE COURT:**  All right.  I'll take judicial

10   notice of both facts.

11           **MR. BIGGERS:**  At this time the government

12   rests, Your Honor.

13           **THE COURT:**  All right, thank you.

14           Ladies and gentlemen, you heard the last

15   information and the very final thing that Mr.

16   Biggers said was that the government rests its case

17   at this time.

18           That signals to me that there are certain

19   things that I have to take up with the lawyers.

20   Some of the things that I have to take up are legal

21   in nature and so I would have to -- I could take

22   them up at side-bar, but we would be over here quite

23   a while and y'all would be wondering what we're

24   saying.  Say that to say I'm getting ready to excuse

25   you into the jury room.  Why don't you all go ahead

1    and take your afternoon break at this time.  It's

2    going to take me about, I'd say, 20 minutes, maybe

3    30 minute in order to get through the things with

4    the lawyers and get to the point where we are ready

5    to proceed.

6              Now remember my instructions, they are

7    still in effect, leave your notebooks in your hairs,

8    don't discuss the case, although you've heard the

9    government's case, and we will get back to you, like

10   I say, in about 20 or 30 minutes.

11             (Jury out at 2:23 p.m.)

12             **THE COURT:**  Anyone need a break before we

13   proceed?

14             As I think you know there's a few things

15   that we need to take up at this time, motions, and

16   then discussions about defense proof and things of

17   that nature.

18             I'm ready to proceed at this time unless

19   anyone needs a break.

20             **MR. BIGGERS:**  The government does not need

21   a break before proceeding with those matters.

22             **MS. JERMANN-ROBINSON:**  I'm fine.

23             **THE COURT:**  Why don't we start and I will

24   ask if there are any motions?

25             **MS. JERMANN-ROBINSON:**  Yes, Your Honor,

1    there are.

2              On behalf of Robert Drew I have two

3    motions.  One is to renew my filed motion to

4    suppress that was denied by magistrate court and

5    then that was agreed to or approved by this court,

6    that was a motion to suppress the identification as

7    being suggestive -- suggestive.  It was denied, I

8    believe, because an identification of clothing, not

9    of an individual.

10             But it seems very clear from the proof

11   that was brought forth today, that were substantive

12   identification of the clothing for the individual.

13   And this individual was brought in front of a police

14   car in handcuffs and a picture of him from the

15   chin -- oh, I'm sorry -- from the chin all the way

16   down was taken and given for identification purposes

17   and that was admitted into evidence, and actually

18   the photograph in evidence at this time, Your Honor.

19             And to say that is not suggestive, there

20   are certainly many other ways, if clothing were at

21   issue, they could have held him temporarily, removed

22   his clothing, shown them to the victim.  Those sorts

23   of things could have been done.

24             It was done actually when the photographs,

25   I suppose, were sent to, I don't know if they were

1    by e-mail or by mail, but sent from the Oakland

2    Police Department to the Memphis Police Department,

3    that would not be a suggestive, but we're talking

4    about an actual person where you can see his -- you

5    could see he's African-American, you can see that he

6    is in custody, you can see that he is standing up

7    against a police car, once of the witnesses even

8    said that, but a police car.

9            Your Honor, I'm just renewing this motion,

10   probably mostly for the record, but I can confirm

11   that consider just being an identification of

12   clothing, this is the entire government's case, that

13   this clothing is the exact clothing that was on the

14   person of Robert Drew.

15           And so I renew that motion at this time.

16           **THE COURT:**  Anything else?

17           **MS. JERMANN-ROBINSON:**  Yes.

18           I would like to make a general motion

19   under *Jackson versus Virginia* to take this matter

20   away from the jury and for a judgment of acquittal,

21   the evidence is insufficient at this point to go to

22   jury.

23           **THE COURT:**  Okay, that do it, that's all?

24           **MS. JERMANN-ROBINSON:**  I usually say and

25   any other motions I need to renew, but I think

1   that's it.

2              **THE COURT:**  All right, thanks.

3         Now let me hear from the government.

4              **MR. BIGGERS:**  Your Honor, dealing with the

5   defendant's first motion, renewing the motion to

6   suppress, the government's response, there was not

7   an identification of a defendant, a person in this

8   particular matter.  All the witnesses that came

9   before the court and testified, specifically

10  Mr. Harris, that's who we're talking about,

11  testified that he was never shown a face of the

12  suspect, he was shown clothing.  And it was on a

13  person's body, but his identification was based on

14  the actual clothing.

15        He pointed out the specifics of that

16  clothing, the coloring of the jacket, and the unique

17  embalm on that jacket's pocket as being consistent

18  with his recollection of the robbery.

19        Now for that, the government ask that

20  their motion be denied.

21        With regard to the second motion, the

22  government submits that it submitted enough --

23  presented enough proof to satisfy each and every

24  element of all the charges in the five-count

25  indictment, and that it should be submitted to the

1    jury.

2              **THE COURT:**  Thank you.

3              Anything further, Ms. Robinson?

4              **MS. JERMANN-ROBINSON:**  No, Your Honor.

5              **THE COURT:**  All right, thank you.

6              I'm going to have to overrule both of the

7    motions.

8              The motion to suppress, I reviewed the

9    transcript and the arguments, the report and

10   recommendation was presented by the magistrate, and

11   I reviewed that, too, all of the filings and I

12   adopted the findings of the or rather the R and R of

13   the magistrate.

14             The indication that there really wasn't an

15   issue as far as identification.  It wasn't a person

16   involved, it was an article involved, that being the

17   jacket.

18             It seems as though the motion today is

19   that the jacket and the way it was worn by the

20   defendant that night and then later presented to the

21   witness who testified in court was too suggestive, I

22   have to disagree with that.

23             It may have been a squad car that the

24   defendant was standing in front of, but you really

25   can't tell that.  I think one of the offices said

1    that because he knew.  I mean, it's not like there's

2    flashing lights, emblem on the side Oakland police

3    or anything like that, but even if there were,

4    there's nothing overly suggestive about the whole

5    taking of the picture of the defendant from the neck

6    down eliminating his -- his head.

7            Ms. Robinson argues that he was in

8    custody.

9            Well, his hands were behind him.  In the

10   picture you can't see the cuffs that I remember.

11   And correct me if I'm wrong on that, but the person

12   standing with his hands behind his back clearly

13   showing the jacket, along with the emblem or symbol

14   or whatever it was on the jacket, and that's what

15   the victim in the case identified -- identified.

16           So there is, I mean, it shows what it

17   shows, the jacket and a person is wearing it but it

18   is not suggestive.  And, therefore, there is no

19   prejudice as far as or undue prejudice as far as the

20   presentation of the jacket to the witness and

21   ultimately to the jury.

22           And if those are the reasons for the

23   objection at this time, I have to overrule them,

24   there's just, you know, there's just nothing there.

25           Sufficiency of the evidence.  Of course,

 1   this is a jury case and there are facts that the

 2   jury is going to have to make the final decision.

 3           As I think you both know, the big issue

 4   right now is identification, the defendant as the

 5   person who was wearing those items and attempted to

 6   do those robberies.

 7           But when I review the evidence that was

 8   presented in the light most favorable to the

 9   government, I have to overrule the motion.

10           There is sufficient evidence to allow this

11   to go to the jury.

12           This is a circumstantial evidence case

13   clearly.  There's no direct identification of the

14   defendant as the person, but clearly the

15   circumstances point to that, all of the clothing

16   items that were later found on the defendant or

17   close to where he was apprehended have been

18   introduced.  We have seen them on both of the

19   videos.

20           I mean, there will be arguments about

21   whether or not it's the same jacket and thereby

22   whether or not it's the same person, things like

23   that, but that all -- that gives rise to jury

24   questions ultimately that the jury is going to

25   decide.  Whether or not those clothing items that we

1    have in the courtroom now are the same clothing

2    items that are on the videos, the jury will have to

3    make that decision.  Because the defendant was

4    either wearing them or in close proximity to them

5    when he was taken into custody.  And, of course, the

6    circumstances indicate that he was the person who

7    had wore them just a few minutes after the attempt

8    at the market in Oakland and, you know, sometime

9    before, an hour or so, I don't know how long, at the

10   KFC.

11          So clearly it's circumstantial evidence

12   and clearly the jury is going to have to make the

13   decision.  But in the light most favorable to the

14   government, our decision is that the jury are going

15   to have to make, and so I'm going to have to

16   overrule the motion at this time.

17          Let me turn now to the defense and ask

18   about defense proof.

19          There's an indication earlier that there

20   would be two witnesses.  I just need to verify that

21   and I also need to talk with you about the defendant

22   and his decision.

23          **MS. JERMANN-ROBINSON:**  That's correct,

24   Your Honor, I have two very short witnesses.  And I

25   do not believe that Mr. Drew is going to testify.

1        **THE COURT:**  All right.  You ready to

2  proceed with that and put it on the record now.

3        **MS. JERMANN-ROBINSON:**  We can do that,

4  Your Honor, I wasn't sure if you wanted me to voir

5  dire him.  I have spoken with him, I'm confident

6  that that's his decision, but I know that some

7  courts prefer to do it on the record.

8        **THE COURT:**  I do.  I always voir dire

9  the -- the defendant just to make sure it's clear on

10  the record.

11        **MS. JERMANN-ROBINSON:**  Okay.

12        **THE COURT:**  And so we can do that now

13  or -- we are going to take a break anyway, and we

14  can do it after the break.

15        **MS. JERMANN-ROBINSON:**  Why don't we do it

16  after the break, I will speak to him one more time

17  to make sure that's decision.

18        **THE COURT:**  All right, that sounds good.

19        And are you ready with your witnesses?

20        **MS. JERMANN-ROBINSON:**  I am.  They are

21  here.

22        **THE COURT:**  Okay.  So we will take about

23  ten, 15 minutes and then we'll get the jury back in

24  after we speak with Mr. Drew and hopefully finish

25  the proof in the case.  Okay.

1                  All right.  We'll be in recess.

2            **THE CLERK:**  Court stands in recess.

3            (Recess at 2:32 p.m.)

4            **THE COURT:**  Okay.  Why don't we go ahead

5     and proceed with Mr. Drew's decision about

6     testifying.

7                  I'm assuming it hasn't changed?

8            **MS. JERMANN-ROBINSON:**  It has not changed,

9     Your Honor.

10           **THE COURT:**  Okay.  I would like for him to

11    come forward.

12                 Come forward, Mr. Drew, if you would,

13    please.

14                 I need to place you under oath and we just

15    have a couple of questions for you.

16                 Okay, right there.

17                 If you would, please, raise your right

18    hand.

19                 Do you solemnly swear or affirm, under the

20    penalties of perjury, the testimony that you are

21    about to provide the court in this matter on trial

22    will be the truth, the whole truth and nothing but

23    the truth, so help you God?

24           **THE WITNESS:**  About the testimony?

25           **THE COURT:**  Yes, that's right, be the

1   truth.

2           **THE WITNESS:**  Yes, sir.

3           **THE COURT:**  Just have a seat right here if

4   you would.

5           **MS. JERMANN-ROBINSON:**  Your Honor, do you

6   want -- do you usually question them or do want me

7   to?

8           **THE COURT:**  I will, but I would like for

9   you to go on and place on the record, you know, what

10  the state of the situation is.

1                          **ROBERT DREW,**

2       was thereupon called as a witness on behalf of the

3       Defendant, and having been first duly sworn,

4       was examined and testified as follows:

5                        **DIRECT EXAMINATION**

6       **BY MS. JERMANN-ROBINSON:**

7       **Q.**      I know you're Mr. Drew, but will you state

8       your name and spell it for the record.

9       **A.**      My name is Robert Drew.  R-o-b-e-r-t,

10      D-r-e-w.

11      **Q.**      And, Mr. Drew, I've been your lawyer since

12      you not charged over here in the federal system?

13      **A.**      Yes, ma'am.

14      **Q.**      And we have together prepared for this trial?

15      **A.**      Yes, ma'am.

16      **Q.**      And you have looked at the discovery and then

17      our investigation?

18      **A.**      Yes, ma'am.

19      **Q.**      And I shared that with you?

20      **A.**      Yes, ma'am.

21      **Q.**      We discussed the case?

22      **A.**      Yes, ma'am.

23      **Q.**      And we discussed that you have a right to

24      testify --

25      **A.**      Yes.

1   **Q.**      -- if you would like and tell the jury your

2   side?

3   **A.**      Yes.

4   **Q.**      Also discussed the problems with that, that

5   you have a record that the jury will never hear

6   about if you don't testify, but, if you do, then

7   your entire record within the last 10 years would

8   come in?

9   **A.**      Yes.

10  **Q.**      And based on our discussions have you come up

11  with a decision as to whether or not you would like

12  to testify?

13  **A.**      Yes, I have.

14  **Q.**      And what is that decision?

15  **A.**      That decision, I will not testify due to the

16  facts of my past.

17  **Q.**      And are you certain about this?

18  **A.**      Yes, ma'am.

19  **Q.**      Do you have any questions about your rights?

20  **A.**      Do I have any questions?

21  **Q.**      Any questions about your rights to testify or

22  not to testify?

23  **A.**      I understood that -- that clearly that if I

24  testify that you bring my past record up, and I

25  chose not due to the fact that this here is

1    something that I don't want to do.

2  **Q.**     Okay.

3          **MS. JERMANN-ROBINSON:**   All right, thank

4    you, sir.

5  **BY THE COURT:**

6  **Q.**     Now you're making this decision on your own,

7    your own free will.

8  **A.**     Yes, sir.

9  **Q.**     And you made the decision after conferring

10   with your lawyers?

11 **A.**     I had already made the decision and my

12   lawyer, I talked it over with her when she brought

13   me the paperwork to sign.  And I made, really I made

14   my own decision that I wasn't going to do that.

15 **Q.**     Okay.  And that's your absolute right.  And I

16   think you know I will instruct the jury that they

17   can't hold that against you, that you are going to

18   be silent, do you understand that?

19 **A.**     I hope so, Your Honor.

20 **Q.**     On the other hand, if you decided that you

21   wanted to testify, you know, it would be your right

22   to testify and you could tell the jury in our own

23   words what happened.

24          But I think you decided that you don't want

25   to do that, is that right?

1   **A.**      I want my attorney to tell them what

2   happened.

3   **Q.**      Okay.  And so she will argue that for you

4   after all the proof is in?

5   **A.**      Yes, sir.

6   **Q.**      But you don't want to tell them anything --

7   **A.**      No, I don't.

8   **Q.**      -- because of the fear of your criminal

9   record?

10  **A.**      I want my attorney to.

11  **Q.**      And I think you made it clear, you made that

12  decision?

13  **A.**      I made that decision, Your Honor.

14  **Q.**      All right.  There is no force or coercion or

15  anything like that, you are doing this of our own

16  free will?

17  **A.**      Yes, sir.

18  **Q.**      Okay, thank you.

19          **THE COURT:**  You can step down.

20              (Witness excused.)

21          **THE COURT:**  Okay.  Are you ready as far as

22  your witnesses are concerned?

23          **MS. JERMANN-ROBINSON:**  Yes, Your Honor.

24          **THE COURT:**  Why don't we get all of the

25  proof out of the way and then we will start talking

1   about jury charge.  I'm starting to work on it back

2   there.  And obviously I'll meet with both sides

3   before we get the final instruction together.

4              Let's go ahead and deal with the proof.

5              And so why don't you bring in the jury,

6   please.

7              (Jury present at 3:00 p.m.)

8       **THE COURT:**  Okay, folks, we're ready to

9   pick it up and move forward at this time.

10          I think just prior to the break the

11   government indicated they rest their case and so we

12   are going to turn to the defense now and see if

13   there will be any proof.

14          Ms. Robinson, Mr. Germany, will there be

15   any proof from the defense?

16       **MS. JERMANN-ROBINSON:**  Yes, Your Honor.

17          I would like to call Mr. Marvin Ponder.

18       **THE COURT:**  Marvin Ponder, okay.

19          Come forward, sir.

20          Right up this way.

21          Okay, you are good right there.

22          Raise your right hand.

23          Do you solemnly swear or affirm, under the

24   penalties of perjury, the testimony that you are

25   about to provide the court and jury in the case now

410

1    on trial to be the truth, the whole truth and

2    nothing but the truth, so help you God?

3             **THE WITNESS:**  Yes, sir.

4             **THE COURT:**  Have a seat right here if you

5    would, please.

6             **MS. JERMANN-ROBINSON:**  Thank you, Your

7    Honor?

8             **THE COURT:**  Uh-huh.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MARVIN PENDER - DIRECT

411

1                           **MARVIN PENDER,**

2    was thereupon called as a witness on behalf of the

3    Defendant, and having been first duly sworn,

4    was examined and testified as follows:

5                       **DIRECT EXAMINATION**

6    **BY MS. JERMANN-ROBINSON:**

7    **Q.**     Will you state your name, and please spell it

8    for the court reporter.

9    **A.**     Yes, ma'am.  It's Marvin Pender, M-a-r-v-i-n,

10   P-e-n-d-e-r.

11   **Q.**     And who do you work for?

12   **A.**     The Memphis Police Department.

13   **Q.**     And what do you do?

14   **A.**     I am a communication supervisor.

15   **Q.**     And as a communication supervisor, would you

16   explain for the jury a little bit about what you do?

17   **A.**     My daily tasks include dealing with the

18   director, chiefs, overseeing over a hundred

19   dispatchers, making tapes, audio request for court,

20   and print a chronology, things like that.

21   **Q.**     Okay.  And, if you would, explain a little

22   bit about the dispatch process.

23           Does that entail communications between

24   officers and, I guess, the communications

25   department?

MARVIN PENDER - DIRECT

412

A.      Yes, ma'am.  Basically our dispatch works,
our dispatchers, they stay in communications with
the citizens when they call in on 9-1-1 or the
non-emergency line.  And we also have dispatchers
who talk to the officers out in the field as well,
like a life-line between the two.

Q.      Okay.  And are those communications recorded?

A.      Yes, ma'am.

Q.      Okay.  And are they timestamped?

A.      Yes, ma'am.

Q.      Okay.  So would it be safe to say that you
can tell what time an officer arrives at a scene,
for example?

A.      Yes, ma'am.

Q.      Okay.  Maybe when he leaves the scene?

A.      Yes, ma'am.

Q.      Maybe when they find evidence, things of that
nature?

A.      Yes, ma'am, everything is documented.

Q.      Okay.  And in the course of your job and in
your employment, did you receive a request from my
office for information concerning communications on
a robbery at -- in -- I'm sorry -- in Lakeland,
Tennessee at about 9:30 p.m. at the Kentucky Fried
Chicken at, I believe it's 8895 Highway 64?

MARVIN PENDER - DIRECT

413

1   **A.**      Yes, ma'am.

2   **Q.**      Okay.  And could you tell me what time that

3   event began or can you tell that from, I guess from

4   the dispatch event chronology?

5   **A.**      Yes, ma'am.  The actual call was received at

6   2140 hours which is 9:30 p.m.

7   **Q.**      9:40 p.m.?

8   **A.**      Yes, ma'am.

9   **Q.**      And can you tell from that chronology how you

10  all received that information?

11  **A.**      Yes, ma'am.  Looks like an employee called in

12  on 9-1-1.

13  **Q.**      Okay.  An employee of the store or does it

14  just say employee?

15  **A.**      Employee from the KFC.

16  **Q.**      Okay.  And that's what began this event?

17  **A.**      Yes, ma'am.

18  **Q.**      Okay.  And does that chronology, does it

19  accurately reflect all the calls between officers

20  and communications throughout this investigation?

21  **A.**      Yes, ma'am, it does.

22  **Q.**      Okay.  Can you tell me when the last

23  communication was?

24  **A.**      The last communication between officer and

25  dispatcher was at 2315 which is 11:15 p.m.

MARVIN PENDER – DIRECT

414

1    **Q.**     Okay.  And is that record kept in the usual

2    course of your business as being the communications

3    supervisor?

4    **A.**     Yes, ma'am, it is.

5    **Q.**     And are you under a duty to keep that record?

6    **A.**     Yes, ma'am.

7    **Q.**     And, again, does it accurately reflect what

8    was requested, the events from -- I'm sorry -- the

9    communications from that robbery on December the

10   7th, 2012?

11   **A.**     Yes, ma'am.

12           **MS. JERMANN-ROBINSON:**  Like to have

13   that -- offer that as the next exhibit, Your Honor.

14           **THE COURT:**  Any objection?

15           **MR. BIGGERS:**  Without objection, Your

16   Honor, just attempted robbery and I believe it's

17   8995, I'm not sure.

18           **MS. JERMANN-ROBINSON:**  I thank him for the

19   correction, he's right.

20           **THE COURT:**  All right.  There is no

21   objection, I believe to the --

22           **MR. BIGGERS:**  No objection, Your Honor.

23           **THE COURT:**  -- introduction.

24           And we will go ahead and admit the

25   documents.

MARVIN PENDER - DIRECT

415

1          How many documents do we have there.

2          **MS. JERMANN-ROBINSON:**  It's one document

3    but I believe it's three or four pages.

4          **THE COURT:**  That's what I mean, pages.

5          **MS. JERMANN-ROBINSON:**  Three pages.

6          **THE COURT:**  Three-page document.  And that

7    will be Exhibit 34.

8          **THE CLERK:**  Thirty-four.

9          **THE COURT:**  Thirty-four.

10         (Exhibit Number 34 was marked;

11   Description:  Chronology.)

12         **MS. JERMANN-ROBINSON:**  Thank you.

13         Your Honor, may I have one moment?

14         **THE COURT:**  Go ahead.

15         **MS. JERMANN-ROBINSON:**  Thank you, Your

16   Honor.

17   **BY MS. JERMANN-ROBINSON:**

18   **Q.**    I will return that document to you.

19         In looking at that document, at the hour of

20   2203:18, can you tell if there was a report about a

21   description of clothing of the suspect?

22   **A.**    What was the timeframe again?

23   **Q.**    I think it's 2203:18.

24   **A.**    Yes, ma'am.

25   **Q.**    Okay.  Could you tell if it -- can you tell

MARVIN PENDER - DIRECT

416

1    me what that description is?

2    **A.**    A male black wearing a blue bubble coat, blue

3    hoody and bluejeans.

4    **Q.**    Okay.  Does it make any indication there that

5    that was a correction from any earlier broadcast?

6         If you can tell.

7    **A.**    Looks like it was a correction from a

8    broadcast that was at 2149 which was at 9:49 they

9    put out a broadcast on a male black wearing a

10   flannel brown plaid with a blue ski mask.

11   **Q.**    Okay.  So the later broadcast was the one

12   that called it a bubble coat?

13   **A.**    Yes, ma'am.

14        **MS. JERMANN-ROBINSON:**  No further

15   questions.

16        **THE COURT:**  Thank you.

17        And is there any cross?

18        **MR. BIGGERS:**  Yes, Your Honor.

19                  <u>**CROSS EXAMINATION**</u>

20   BY MR. BIGGERS:

21   **Q.**    Mr. Pender?

22   **A.**    Yes, sir, Pender.

23   **Q.**    My name is David Biggers, how you doing this

24   afternoon?

25   **A.**    Fine, sir.

MARVIN PENDER - CROSS

417

1  **Q.**     A few questions.

2  **A.**     Uh-huh.

3  **Q.**     Going through that note that defense counsel

4  just asked you about, reference a bubble coat, what

5  about that makes you say it's a correction?

6  **A.**     It says additional to the broadcast which

7  means the officer on the scene received additional

8  information on the description.

9  **Q.**     Does that necessarily mean that it's an

10  actual correction?

11  **A.**     No, sir, just says additional information.

12  **Q.**     And you never went to the scene of this

13  offense, did you?

14  **A.**     No, sir, I did not.

15  **Q.**     You have no personal knowledge as to what

16  information was provided to anyone on that scene, do

17  you?

18  **A.**     Not on the scene, no, sir.

19  **Q.**     In fact, dealing with that particular comment

20  that you're referencing, do you have any idea as to

21  how that information was received?

22  **A.**     No, sir.

23  **Q.**     So you don't know who it came from?

24  **A.**     Only -- well, the only thing I know is it

25  came from the dispatcher, the DP08 and she

MARVIN PENDER - CROSS

418

1   documented the information.

2   **Q.**     But you don't know who -- I guess who advised

3   any law enforcement officer of that description

4   bubble coat.

5   **A.**     No, sir.  No, sir.

6   **Q.**     All right.  Go back to the first page.

7   Timestamped 2141:12.

8          Do you see that?

9   **A.**     Yes, sir.

10  **Q.**     What's given in that particular spot?

11  **A.**     This the -- looks like this is the original

12  description that was given at the time.

13  **Q.**     What is that?

14  **A.**     It says a male black, tall, thin build,

15  wearing a blue ski mask, brown plaid jacket, unknown

16  pants.

17  **Q.**     The next event comment, does it detail which

18  direction the robbery suspect left?

19  **A.**     Yes, sir, it says last scene westbound on 64

20  on foot.

21  **Q.**     Is there a name of anyone mentioned in the

22  following comments?

23  **A.**     No, sir.

24  **Q.**     Look at the two --

25  **A.**     Oh, the -- well, at 2141 you've got the name

MARVIN PENDER – CROSS

1   of the individual that called from the business,

2   Jesse Baker, the employee.

3   **Q.**     Go to the next page for me.

4   **A.**     Uh-huh.

5   **Q.**     2149:34.

6   **A.**     Yes, sir.

7   **Q.**     See another event comment?

8   **A.**     Yes, sir.

9   **Q.**     What is that?

10  **A.**     This is an update from the officer 827 Delta,

11  he's putting out an actual broadcast that he

12  received, he's saying attempted armed robbery of the

13  business response was a male black, six-two, 210

14  pounds wearing a blue ski mask.  Says flannel brown

15  plaid along with a silver slug revolver.

16  **Q.**     So there are two comments based on the

17  dispatch log giving that description of a blue mask

18  and a flannel or plaid jacket, is that correct?

19  **A.**     Yes, sir.

20  **Q.**     And this is the additional comment of a

21  revolver is that correct, a silver revolver?

22  **A.**     That is correct.

23          **MR. BIGGERS:**  No further questions at this

24  time, Your Honor.

25          **THE COURT:**  Thank you.

1          Any redirect?

2          **MS. JERMANN-ROBINSON:**  May I do it from

3   here, Your Honor?

4          **THE COURT:**  Sure.

5                    **REDIRECT EXAMINATION**

6   **BY MS. JERMANN-ROBINSON:**

7   **Q.**    The last description that is shown on that

8   dispatch, on that summary, I suppose, describes a

9   bubble jacket, is that correct?

10  **A.**    That is correct.

11         **MS. JERMANN-ROBINSON:**  Nothing further.

12         **THE COURT:**  Okay.

13         Any recross?

14         **MR. BIGGERS:**  No, Your Honor.

15         **THE COURT:**  All right.  Mr. Pender, thank

16  you very much for coming down.  You may step down,

17  you are excused.

18         **THE WITNESS:**  Yes, Your Honor.

19         Thank you.

20         **THE COURT:**  Uh-huh.

21              (Witness excused.)

22         **THE COURT:**  Call your next witness.

23         **MS. JERMANN-ROBINSON:**  Thank you, Your

24  Honor.

25         I'd like to call Carol Ann Mason.

1              THE COURT:  Come forward, right upfront

2   here.

3              Okay.  Right there.

4              Raise your right hand.

5              Do you solemnly swear or affirm, under the

6   penalties of perjury, the testimony that you are

7   about to provide the court and jury in the case now

8   on trial to be the truth, the whole truth and

9   nothing but the truth, so help you God?

10             THE WITNESS:  Yes.

11             THE COURT:  Have a seat right over here,

12  please.

13             MS. JERMANN-ROBINSON:  May I proceed, Your

14  Honor?

15             THE COURT:  Go ahead.

16             MS. JERMANN-ROBINSON:  Thank you.

17

18

19

20

21

22

23

24

25

CAROL ANN MASON - DIRECT

1    **CAROL ANN MASON,**

2    was thereupon called as a witness on behalf of the

3    Defendant, and having been first duly sworn,

4    was examined and testified as follows:

5    **DIRECT EXAMINATION**

6    **BY MS. JERMANN-ROBINSON:**

7    **Q.**    Would you state your name for the record and

8    spell it for the court reporter.

9    **A.**    Carol Ann Mason, Carol Ann Mason.

10   **Q.**    And with whom are you employed?

11   **A.**    I'm the 9-1-1 Director for Fayette County.

12   **Q.**    Okay.  And in that position, could you tell

13   the jury what you do for a living?

14   **A.**    I'm in charge of the 9-1-1 Center, we do all

15   the addressing for the county.  Also, Custodian of

16   the Records for our dispatch center, all the 9-1-1

17   calls, phone calls, radio traffic.

18   **Q.**    And were you in -- working in that capacity

19   in December of 2012?

20   **A.**    Yes, I was.

21   **Q.**    Okay.  And in working in that capacity now,

22   did you receive a request from my office for a

23   dispatch or communications with reference to a

24   robbery that occurred December 7th, 2012, at the

25   Hickory Center Market?

CAROL ANN MASON - DIRECT

423

1    **A.**      Yes.

2    **Q.**      Okay.  And did you, as a result of -- well,

3    let me ask you this.

4          In dispatch in Fayette County are there

5    recordings made of communications between police

6    officers and the dispatch office?

7    **A.**      Yes.

8    **Q.**      Okay.  And are those recorded?

9    **A.**      Our radio traffic is recorded.

10   **Q.**      And are they -- are they timestamped?  Are

11   they -- there's a date and a time?

12   **A.**      Yes.

13   **Q.**      Okay.  And it's done in real time?

14   **A.**      Yes, it is.

15   **Q.**      Okay.  And then a report, a written report is

16   generated or can be generated and that would pretty

17   much tell you all the communications between the

18   officers, in between the officers and dispatch that

19   were recorded?

20   **A.**      Correct.

21   **Q.**      And do you have such a report for that event

22   on December the 7th, 2012?

23   **A.**      Yes, I do.

24   **Q.**      And can you tell me the time that you were

25   first notified, the dispatch was first notified

CAROL ANN MASON – DIRECT

424

1    about this robbery?

2    **A.**      At 2216.

3    **Q.**      Okay.  And what time is that?

4    **A.**      10:16.

5    **Q.**      Sixteen.

6    **A.**      P.m.

7    **Q.**      Okay.

8           **MS. JERMANN–ROBINSON:**  No further

9    questions.

10          **THE COURT:**  All right.  Will there be any

11   cross.

12          **MR. BIGGERS:**  Yes, Your Honor.

13                  **CROSS EXAMINATION**

14   **BY MR. BIGGERS:**

15   **Q.**      Good afternoon, Ms. Mason.

16   **A.**      Good afternoon.

17   **Q.**      My name is David Biggers, I'm with the United

18   States Attorney's office, I have a few questions for

19   you.

20          Now you briefly described your duties with

21   Fayette County.  What type of information would

22   dispatch be responsible for documenting or keeping

23   up with on any particular call?

24   **A.**      Any call that comes in from a police officer

25   or a 9-1-1 call or admin call if it's an emergency

1    or someone needing assistance.

2    **Q.**     And I believe you testified to the time of --

3    that the call came in for an attempted robbery of

4    the Hickory Center Market, is that correct?

5    **A.**     Correct.

6    **Q.**     And your testimony was that that time was

7    2216?

8    **A.**     Correct.

9    **Q.**     That's 10:16 p.m., is that correct?

10   **A.**     Correct.

11   **Q.**     Do you know if the law enforcement was

12   notified at any point?

13   **A.**     Yes.

14   **Q.**     Which -- what law enforcement agency was

15   notified?

16   **A.**     Oakland Police Department.

17   **Q.**     What time were they notified?

18   **A.**     They were notified at 2216:59.

19   **Q.**     And in non-military time, what time is that?

20   **A.**     10:16:59.

21   **Q.**     One second from 10:17?

22   **A.**     The call came in at 2216:16, okay, so we get

23   down to tenths of seconds.

24   **Q.**     Okay.  So --

25   **A.**     And then Oakland PD was dispatched at

CAROL ANN MASON - CROSS

426

1   2216:59.

2   **Q.**    Which is the equivalent of 10:16:59?

3   **A.**    Correct.

4   **Q.**    Do you show when Oakland police arrived on

5   the scene of the Hickory Center Market?

6   **A.**    2217:07.

7   **Q.**    We're talking about a matter of seconds?

8   **A.**    Correct.

9   **Q.**    Is that 10:17:07?

10  **A.**    Correct.

11  **Q.**    Do you show if anyone was taken in custody in

12  relation to this attempted robbery at the Hickory

13  Center Market?

14  **A.**    Dispatch was advised they had someone in

15  custody at 2220:59.

16  **Q.**    What time is that?

17  **A.**    10:20:59.

18  **Q.**    10:20.

19  **A.**    Correct.

20  **Q.**    The call came out at roughly 10:16 --

21  **A.**    16, uh-huh.

22  **Q.**    And by 10:20 someone was already in custody,

23  is that correct?

24  **A.**    Correct.

25  **Q.**    Now do you show -- if any evidence was

1   collected, would dispatch keep track of that?

2   **A.**     If they were advised by the officer.

3   **Q.**     In this particular case do you know if any of

4   the officers with the Oakland Police Department

5   notified dispatch the recovery of a Rossi .38

6   caliber firearm?

7   **A.**     They advised they had a weapon at 2252:21, so

8   10:52.

9   **Q.**     10:52?

10  **A.**     Correct.

11  **Q.**     So that's approximately 30 minutes after they

12  advised they had a subject in custody?

13  **A.**     Correct.

14          **MR. BIGGERS:**  No further questions, Your

15  Honor.

16          **THE COURT:**  Thank you.

17          Any redirect?

18          **MS. JERMANN-ROBINSON:**  Just two questions,

19  Your Honor.

20          **THE COURT:**  Okay.

21                 **REDIRECT EXAMINATION**

22  BY MS. JERMANN-ROBINSON:

23  **Q.**     In looking at your report.

24          Do you show that they were advised that any

25  other property was found by these officers besides

CAROL ANN MASON - REDIRECT

428

1    the weapon?

2    **A.**      Not that I see.

3    **Q.**      Take your time?

4    **A.**      Dispatch advised that nothing was taken from

5    the store.

6    **Q.**      As you -- as you look through you don't see

7    whether they recovered a mask or any gloves, do you?

8    **A.**      No.

9              **MS. JERMANN-ROBINSON:**  Thank you.

10             No further questions.

11             **THE COURT:**  And recross based on that?

12             **MR. BIGGERS:**  Yes, Your Honor.

13                   <u>**REDIRECT EXAMINATION**</u>

14   BY MR. BIGGERS:

15   **Q.**      Ms. Mason, based on the dispatch report, can

16   you tell what area law enforcement officers were

17   searching?

18             Direct your attention specifically to

19   2219:48.

20   **A.**      They advised that he would be at Highway 196

21   northbound on foot.

22   **Q.**      And what time was that?

23   **A.**      That was at 2219:48.

24   **Q.**      Or 10:19:48?

25   **A.**      Uh-huh.

CAROL ANN MASON - REDIRECT

429

1          **MR. BIGGERS:**  No further questions Your

2     Honor?

3          **THE COURT:**  Okay.  All right, Ms. Mason,

4     thank you very much, you can step down, you are

5     excused.

6          **THE WITNESS:**  Thank you.

7          **THE COURT:**  Oh, I do have one question I

8     didn't get, you were going through all of those

9     numbers.

10         And the time that the police arrived at

11    the scene, you gave that but I missed it.

12         **THE WITNESS:**  2217:07.

13         **THE COURT:**  That's 10:17 --

14         **THE WITNESS:**  Yes, sir.

15         **THE COURT:**  -- '07?

16         All right, thank you.

17         **THE WITNESS:**  Uh-huh.

18              (Witness excused.)

19         **THE COURT:**  All right.  If you would,

20    please, call your next witness.

21         **MS. JERMANN-ROBINSON:**  The defense rests.

22         **THE COURT:**  All right, thank you,

23    Ms. Robinson.

24         Will there be any rebuttal?

25         **MR. BIGGERS:**  No, Your Honor.

1           **THE COURT:**  Okay, thank you.

2           Okay.  Ladies and gentlemen, you heard

3     from Ms. Robinson that the defense rest, they have

4     no additional proof.  And also from the government

5     there will be no rebuttal proof.  And so you've

6     heard all the proof that you are going to hear in

7     this case as far as making a final decision.

8           The next step in the whole process for you

9     will be the closing arguments of counsel and finally

10    after all the arguments are done, the instruction --

11    the final instructions of law that I'm working on

12    back in chambers, but we haven't got to that point

13    yet.

14          Now that all of the proof is over, I'm

15    going to have to ask you to step into the jury room

16    for a short time.  I will talk with the lawyers

17    about how we are going to advance and deal with

18    those last steps this afternoon, whether you will go

19    home a little early or whether we will be able to go

20    ahead with arguments and hopefully charging this

21    afternoon.

22          But at this point you will need to step

23    into the jury room.  And remember my instructions,

24    leave the notebooks and don't discuss, get back to

25    you and with a decision of how we are going to move

1    as far as you are concerned in just a few minutes.

2                 (Jury out at 3:14 p.m.)

3          **THE COURT:**  As I said, I've been working

4    on a draft of the instructions back there.

5                 Are there any special requests from either

6    side that I should include?

7          **MS. JERMANN-ROBINSON:**  I do have a special

8    request, it has nothing to do with jury

9    instructions, but I've written myself six notes.

10                 I would like to now, again, at the end of

11   my proof --

12         **THE COURT:**  Uh-huh.

13         **MS. JERMANN-ROBINSON:**  -- to renew my

14   motion, *Jackson versus Virginia*, because I don't

15   want to get caught --

16         **THE COURT:**  I should have asked you if

17   there were any additional motions.

18         **MS. JERMANN-ROBINSON:**  Yes.

19         **THE COURT:**  Okay.

20         **MS. JERMANN-ROBINSON:**  I renew the motion

21   to suppress as well.  I understand there is no

22   further proof on that, but for the record --

23         **THE COURT:**  Yes, I understand.

24         **MS. JERMANN-ROBINSON:**  -- I object under

25   *Jackson versus Virginia* for judgment of acquittal.

1          **THE COURT:**  Uh-huh.

2          On both of the motions I have to overrule

3     them, the same reasons that I gave before.  Okay.

4          Anything else as far as the instructions

5     are concerned?

6          Seems like it's pretty straightforward,

7     identification is in there, opinion witness,

8     stipulation, judicial notice, I mean just the

9     usuals.

10         And then, of course, the offenses and I

11    will have verdict forms attached to the

12    instructions.  Okay.

13         Unless there is anything, I will go and

14    see if I can get those finished.  I'm pretty close

15    back there, I'm still fooling around with language

16    for the actual robbery, attempt robbery offenses.

17         **MR. BIGGERS:**  Only two, I guess two

18    special requests from the government, Your Honor.

19         I would ask that the actual verdict form

20    indicate brandished on there in this particular

21    case.

22         **THE COURT:**  Okay.

23         **MR. BIGGERS:**  And secondly, dealing with

24    the instructions themselves, I would ask that the

25    court instruct, give the pattern jury instruction on

 1   flight based on the fact was found hidden in the

 2   woods within 2,000 feet of the business, attempt

 3   robbery.

 4           **THE COURT:**  The defense position on

 5   flight?

 6           **MS. JERMANN-ROBINSON:**  Your Honor, I'd

 7   think the proof has shown that the defendant, Mr.

 8   Drew, was found in the woods.

 9           The question is whether or not there was

10   flight at all.  And I don't think it's an

11   appropriate instruction to give.

12           But I will submit it to the court.

13           **THE COURT:**  All right.  I'll take a look

14   at it and the language of the flight instruction,

15   I'll you all know that shortly.  Okay.

16           All right.

17           **MS. JERMANN-ROBINSON:**  Thank you, Your

18   Honor.

19           **THE COURT:**  We'll be in recess.

20           The court stands in recess.

21           (Recess at 3:24 p.m.)

22           **THE COURT:**  Sorry it took me so long to

23   get the instructions together.

24           I just had difficulty with a couple of the

25   charges, the proper language and then putting

1   together the verdict forms.  I'm sure you all will

2   have some comments about it.

3          Let me start first with the government,

4   see if there are any request for changes, deletions

5   or additions, things of that nature.

6              **MR. BIGGERS:**  Yes, Your Honor.

7          First, just jumping to the verdict form.

8              **THE COURT:**  Okay.

9              **MR. BIGGERS:**  This is, I would say for me

10  a relatively new issue, but the way the court has

11  it, Mr. Herrin already told us about the reordering

12  of the counts on the verdict form.

13             **THE COURT:**  Well, there was an error on

14  that, I think three and four were transposed, I got

15  mine done and you all got corrected copies obviously

16  for verdict.

17             **MR. BIGGERS:**  Referring to counts, I guess

18  it would be two and five, dealing with the actual

19  carrying, use, carrying and brandished.

20             **THE COURT:**  Right.

21             **MR. BIGGERS:**  Just out of an abundance of

22  caution the government would ask, I guess, that the

23  form be modified in a way to allow the jurors to

24  select whether they found that he used and carried

25  it.

1              **THE COURT:**  I started to do that and then

2     it complicated it in such a way that I decided to

3     put them together, but I can do that, I can -- I can

4     you know, if you are carrying it, I know there's a

5     difference, but you have to carry it in order to

6     brandish it, but brandish is a little further out

7     there as far as the use of it during the event.

8              But I can break them out and have a --

9     have, you know, separate which would result in

10    probably two decisions that I have to make in the

11    verdict form, I can do that.

12             **MR. BIGGERS:**  That's one thing, Your

13    Honor.

14             And the second, I see now is dealing with

15    the stipulations.

16             Just a second.

17             **THE CLERK:**  Do you want the defendant in

18    here?

19             **THE COURT:**  We have to start over, the

20    defendant is not here.  He needs to be here.  We

21    have to start over when he gets here.  I just didn't

22    even notice.

23             **THE CLERK:**  (On the phone)

24             Can you bring Drew down, please?

25             Thank you.

1         **THE COURT:**  Let's stand in recess.

2         **THE CLERK:**  Court stands in recess.

3         (Recess at 5:39 p.m.)

4         (Defendant is now present at 5:42 p.m.)

5         **THE COURT:**  All right.  Let's come back on

6    the record.

7         Mr. Drew, I'm sorry, we had started

8    talking about the jury charge, what I'm going to

9    read to the jury.  And then my clerk, Mr. Herrin,

10   here noticed that you weren't here, so I stopped.

11   And then, you know, this is your trial, you know,

12   and you need and it's your right to be here

13   throughout every step of it.

14        So we're going to backup and start over

15   again with this discussion and make sure you are

16   present for everything.  Okay.

17        **MR. ROBERT DREW:**  Yes, sir.

18        **THE COURT:**  All right.  Now we'll back and

19   the first thing I think we spoke about,

20   Mr. Biggers -- I first asked if both sides had

21   enough time to take a look at the proposed charge.

22        And then we had indicated that a couple of

23   the charges need to be reversed, that three and four

24   needed to be changed over.  I think the -- my

25   secretary has already done that.

1           And the next thing was talking about

2    counts two and five of the charge and that language

3    carrying and brandishing.

4           Why don't you go ahead and make the record

5    again on that.

6                 **MR. BIGGERS:**  Yes, Your Honor.

7           The government, just out of an abundance

8    of caution, based on the way the law, the courts

9    have come back on that, the government would ask

10   that the court include two separate spaces for the

11   jury to decide if the defendant merely used and

12   carried or used, carried and brandish for them to

13   check those boxes.

14                **THE COURT:**  All right.  And I'll make

15   those -- those change -- well, let me hear from the

16   defense first on that issue.

17                **MS. JERMANN-ROBINSON:**  I think he's right.

18                **THE COURT:**  All right.  I will make that

19   change and you all will be able to see that prior to

20   us getting into argument and charge.  I'll make the

21   change in both counts.

22                **MR. BIGGERS:**  On page six, Your Honor, the

23   judicial notice portion, it only list Memphis,

24   Tennessee, the fact that it adds Eads, Tennessee as

25   that is the location of the Hickory Center Market as

1    listed in the indictment.

2            THE COURT:  Actually that change didn't

3    get to my secretary.  I will make the change, but I

4    wasn't going to say Memphis, Tennessee or Eads,

5    Tennessee.  I think the request for judicial notice

6    was that the market and KFC were within the Western

7    District of Tennessee and that's how it will read.

8            Like I say, that page, I must not have

9    given it to my secretary, but that change will be

10   made.

11           MR. BIGGERS:  All right.  Beginning on

12   page ten, Your Honor.

13           THE COURT:  Okay.

14           MR. BIGGERS:  The detailed instruction on

15   the element of affecting interstate commerce with

16   regard to the attempted robbery count, and I

17   apologize if I'm missing it, but it does not mention

18   the stipulation between the parties at all as the

19   stipulation is mentioned for the prior felonies on

20   page 14.  Just ask that the court include some

21   language relating to the stipulation of the parties,

22   that we made it an exhibit, that both parties

23   stipulate at the time of this incident both stores

24   were engaged, that the businesses were engaged in

25   interstate commerce.

439

1          **THE COURT:**  I should have been more

2     vigilant communicating with my secretary because

3     there is an instruction that I always include about

4     stipulations, a separate instruction about the

5     stipulation and what it involved.

6               Now do you need it on page ten?  Because I

7     was going to have a separate instruction pertaining

8     to stipulation and it will go right after judicial

9     notice.

10          **MR. BIGGERS:**  Well, I would have to see

11    it, Your Honor, I just made that comment and

12    recommendation at page ten --

13          **THE COURT:**  All right.

14          **MR. BIGGERS:**  -- because of the way it's

15    included at page 14 dealing with the felony.  You

16    said the parties have stipulated that the defendant

17    was convicted of a crime and you also good on and

18    say I instruct you in this connection the prior

19    conviction is an element.  The government does not

20    have to present any proof of that, that's the only

21    reason why I said at page ten.

22               But depending on how the stipulation

23    language reads after judicial notice, that could be

24    satisfactory to the government as well.

25          **THE COURT:**  Okay, I can do that.

1          **MR. BIGGERS:**  The only other potential

2     difference, Your Honor, would be to correspond with

3     the language in the verdict form where you discuss

4     counts two and five where you mention the use,

5     carrying or brandishing.  The use, carrying and --

6     and/or brandishing, just depending on the way the

7     verdict form appears.

8               That's all, that's it from the government.

9          **THE COURT:**  Are you asking that it be

10    "and?"

11         **MR. BIGGERS:**  And/or.

12         **THE COURT:**  And/or.

13         **MR. BIGGERS:**  It just depend on what

14    they -- what they find, Your Honor.

15         **THE COURT:**  And you are making reference

16    to the verdict form, is that correct?

17         **MR. BIGGERS:**  No.  The language in the

18    actual review of the elements, that's on page 11.

19         **THE COURT:**  Okay.  Uh-huh.

20         **MR. BIGGERS:**  Element two, the use,

21    carrying or brandishing of the firearm was during

22    and in relation to the crime charged in Count One,

23    the use, carrying and/or brandishing of the

24    firearm --

25         **THE COURT:**  Okay.

1          **MR. BIGGERS:**  -- in relation to Count One.

2          **THE COURT:**  Not a problem.

3          **MR. BIGGERS:**  The same with regard to

4    Count Five or Count Four.

5          **THE COURT:**  Okay.  Now let me hear from

6    the defense.

7          **MS. JERMANN-ROBINSON:**  Your Honor, page

8    six under identification.

9          **THE COURT:**  Okay.

10         **MS. JERMANN-ROBINSON:**  Because one of the

11   issues is the identification of the defendant as the

12   person who committed the crime, and maybe I'm

13   calling it wrong, but it appears to me that there is

14   identification of clothing and identification of

15   clothing being the same clothing that was worn by

16   the person doing the crime, but there was never an

17   actual identification of the defendant except for,

18   you know, you've seen the picture of Mr. Drew and

19   now you see him here, can you identify him.  And I

20   don't think that's what that's referring to.  So I'm

21   not sure if identification is properly -- should be

22   properly charged.

23         **THE COURT:**  You think I should not include

24   a definition -- an instruction on identification?

25         **MS. JERMANN-ROBINSON:**  That's right, Your

1    Honor.

2              **THE COURT:**  The government.

3              **MR. BIGGERS:**  Your Honor, the government

4    would submit that identification instruction is

5    necessary in this case under the circumstances, and

6    so the wording of it, the identification of the

7    defendant, specifically when you get to some of the

8    elements here, the witness' ability to identify the

9    defendant, I mean, some of that can be altered

10   because we are talking about clothes, but outside of

11   that the government submits that the identification

12   instruction should be given.

13             **THE COURT:**  Ms. Robinson, how can --

14   that's an element of the offense that they have to

15   prove that the defendant committed the crime.

16             **MS. JERMANN-ROBINSON:**  The word

17   identification, I guess, it bothered me because we

18   already went through a motion to suppress and

19   saying, well, there was no identification of the

20   defendant.  There was an identification of clothing.

21   And it seems not right with the facts that have been

22   brought in by the testimony, Your Honor.

23             I understand generally there is --

24             **THE COURT:**  I've never heard a defense

25   lawyer make that request that I remove

1    identification.

2         **MS. JERMANN-ROBINSON:**  I've never -- I've

3    never made the request either, Your Honor, I

4    hesitate to do so, it's just factually speaking, it

5    seems to imply there was an identification made of

6    him and there wasn't.

7         But I will just leave it at that.  I don't

8    have any case law to backup my objection.

9         **THE COURT:**  I'm going to have to overrule

10   that objection.  I -- I just think that that's an

11   element of the offense.  And regardless of defense

12   motion, this goes to the Court of Appeals, I don't

13   give an identification, that goes against much of

14   the instructions that the government's burden is to

15   prove that the defendant committed the crimes.

16        And so I'm going to have to overrule that.

17        Now I may play with the language, I guess

18   as both of you all are saying, and I will read it

19   again this evening, and if I make any changes to it,

20   I will obviously let you all know.  But removing

21   identification as, you know, one of the

22   instructions, I'm -- I'm not going to do that.

23        **MS. JERMANN-ROBINSON:**  Thank you, Your

24   Honor.

25        The only other thing that I have is on

1    page 14.

2             **THE COURT:**  14?

3             **MS. JERMANN-ROBINSON:**  Yes.

4             And this has to do with the 922(g) charge,

5    looks like you have charged both actual and

6    constructive possession.  It appears to me that the

7    proof from the government is that he was actually in

8    possession, that he had it, that he used it, that he

9    carried it, that he stuck it under some leaves.  I

10   don't think there is proof of constructive

11   possession.

12            And so I would ask the court to strike

13   paragraph -- full paragraphs one, two, three, four,

14   about five lines down, it said, did the defendant,

15   and I would strike either, I'd just say the

16   defendant had actual possession of the firearm and

17   then strike or that he had the power and intention

18   to exercise control over it even though it is not in

19   his physical possession, strike that and then leave

20   you may find the government has proven possession.

21            **THE COURT:**  Uh-huh.

22            **MS. JERMANN-ROBINSON:**  Under *United States*

23   *versus James* and a case actually that I tried,

24   *United States versus Albert Smith*, it was found to

25   be error, although in my case it was harmless, and

1    in *James* it was harmful error to give the

2    constructive possession charge when the evidence put

3    on by the government in the proof was purely had

4    actual possession.

5              **THE COURT:**  The government.

6              **MR. BIGGERS:**  Your Honor, the government

7    submits that language, as it is included in the

8    current instruction, is appropriate in this case.

9    Even by the defense counsel's recounting of the

10   government's case, the defendant was in actual

11   possession of the firearm during the time that both

12   attempted robberies, however, when the firearm was

13   recovered, it was hidden in the leaves, that's

14   constructive possession in the area where the

15   defendant left.  The government submits that both

16   are appropriate in this case.

17             **THE COURT:**  I think I'm to overrule the

18   objection and leave the language in there, and it's

19   for that very reason, that during the actual videos

20   showing the crimes, he was in actual possession of

21   the firearm.  But at the time that he was taken into

22   custody, it was not on him, he did not have actual

23   possession.

24             And, in fact, it took the officers another

25   20 or 30 minutes to locate the firearm in the area

1    immediately there by in the leaves where the

2    defendant was found.

3          And so, if we didn't have that testimony,

4    then it would be different, but in light -- in light

5    of the officer's testimony when he was actually

6    taken into custody and it wasn't in his actual

7    possession.  And I'm -- I'm going to overrule the

8    request and leave the language there.

9          **MS. JERMANN-ROBINSON:**  That's all I have,

10   Your Honor.

11         The instructions are fine other than that.

12         **THE COURT:**  All right.  So let me just go

13   through and make sure that I get all the changes

14   that need to be made.

15         I need to include first in the larger or

16   the general instructions the stipulation that I

17   normally put.  And that will be either before or

18   after judicial notice.  I am going to modify or

19   charge what we have here as far as judicial notice

20   because actually went into more detail than the

21   cities, it was the -- each of the businesses were

22   within the Western District of Tennessee.

23         And then, again a reference to the

24   stipulation on page ten.  And that was the

25   stipulation dealing with the --

1          It was on page ten you wanted that added,

2     wasn't it?

3          **MR. BIGGERS:**  Yes, Your Honor, where you

4     discuss the potential affect on commerce between two

5     or more --

6          **THE COURT:**  Yeah, commerce, that's what it

7     was, yeah, towards the bottom.

8          And I will add that language there to

9     clean that up.

10         Then also Count Two and five where we have

11    carried or brandished, it will be changed to carry

12    and/or brandished.

13         I needed to double-check with the defense,

14    the request that the government made, whether there

15    is any objection to that?

16         **MS. JERMANN-ROBINSON:**  No objection, Your

17    Honor.

18         **THE COURT:**  Okay.  And then finally the

19    verdict form, I'm going to break out in someway the

20    carrying, use and carrying of the firearm and then

21    breakout brandishing so that the jury can make a

22    separate finding in that regard in reference to

23    counts two and five of the verdict forms.

24         Okay.  Those are the things that I have

25    right now.  If there any others, let me know now.

1          **MR. BIGGERS:**  One small one from the

2    government, Your Honor, very small.

3          On page two --

4          **THE COURT:**  Okay.

5          **MR. BIGGERS:**  -- the paragraph beginning

6    at statements, arguments and remarks, the last

7    sentence of that paragraph there, do not let rumors,

8    suspensions or anything else that you may have seen

9    or heard outside of court influence your decision in

10   any way.

11         **THE COURT:**  Okay.

12         The preceding sentence and the following

13   sentence made reference to evidence.  The government

14   would just ask that the word "evidence" be

15   transposed for "court" in that sentence or to read,

16   do not let rumors, suspensions or anything else that

17   you may have seen or heard outside of the evidence

18   to influence your decision in any way.

19         The following sentence says, the evidence

20   in the case includes, and the previous sentence says

21   make a decision based solely on -- based only on the

22   evidence.  Make sure it is consistent with the theme

23   there.

24         **THE COURT:**  I'm going to leave it the way

25   it is.  I think it is fine the way it is.  I make

1  several references throughout this what the evidence

2  is and what they should consider.  So I think that's

3  actually pretty clear, it is not going to confuse

4  the jury or anything.

5          **MS. JERMANN-ROBINSON:**  I agree.

6          **THE COURT:**  All right.  Is there anything

7  else?

8          **MR. BIGGERS:**  Nothing else from the

9  government, Your Honor.

10          **MS. JERMANN-ROBINSON:**  No.

11          **THE COURT:**  Okay.  Then we will go ahead

12  and adjourn court and I'd like to get started right

13  at nine o'clock if at all possible tomorrow because

14  I have a busy day.

15          And so if you could get up here and get

16  set up and all a few minutes before, I would

17  appreciate it.  Okay.

18          All right, let's go on and adjourn court.

19          **MS. JERMANN-ROBINSON:**  Thank you, Your

20  Honor.

21          **THE CLERK:**  All rise.

22          This honorable court now stands in

23  adjournment until tomorrow morning at nine a.m.

24          (Adjournment at 5:59 p.m.)

25

1          **THURSDAY MORNING**

2          **APRIL 24, 2014**

3          The trial of this case resumed on this

4  date, Thursday, April 24, 2014, at nine o'clock

5  a.m., when and where evidence was introduced and

6  proceedings were had as follows:

7

8          ------------------------

9

10         **THE COURT:**  Good morning, everyone.

11         **MR. BIGGERS:**  Good morning.

12         **MS. JERMANN-ROBINSON:**  Morning, Your

13  Honor.

14         **THE COURT:**  All right.  I think we are

15  still waiting on the alternate juror so it's a

16  little delay anyway -- oh, she's arrived.

17         I wanted to give you all a fresher copy of

18  the closing instructions, turn your attention to a

19  couple of things.

20         I think I covered everything that we

21  discussed yesterday.  Ms. Robinson, I thought a lot

22  about I.D., and so I put in a different instruction

23  on identification.  It stills keeps the requirement

24  and the burden on the government, but it eliminates

25  a lot of the verbiage and language about a specific

1    identification of him.

2              Page seven is where it's located if you

3    want to take a look.

4              **MS. JERMANN-ROBINSON:**  I -- I have read it

5    and it's fine --

6              **THE COURT:**  Okay.

7              **MS. JERMANN-ROBINSON:**  -- I think it's

8    appropriate.

9              **THE COURT:**  All right.  And just take a

10   look at it.

11             **MR. BIGGERS:**  Looked at it, Your Honor, it

12   looks perfect.

13             **THE COURT:**  All right.  Yeah, it's more

14   concise, I guess it's better for this situation.

15   Okay.

16             **MS. JERMANN-ROBINSON:**  Thank you, Your

17   Honor.

18             **THE COURT:**  Also I want you all to turn

19   your attention to the verdict pages and see

20   specifically counts two and five, the 924(c) counts.

21             What I did was, you know, it's hard to

22   think about how to really set it out.  It really

23   isn't a separate verdict but it's a factual finding

24   that the jury has to -- has to make.

25             And so I set it out in a separate

1    questions, first dealing with carrying and/or using

2    a firearm during and in relation.  Of course, they

3    will find guilty or not guilty.  If they find him

4    not guilty, then we're done.  And I will give that

5    instruction, we will deal with it later.

6           But then further that factual finding is

7    immediately after as to Count Two the defendant

8    brandished or did not brandish a firearm during and

9    in relation.  So hopefully that satisfies that

10   question for the government as well as for the, you

11   know, the Court of Appeals if it ever -- if it ever

12   gets that far.

13          Mr. Biggers, I'm going to pass this back

14   to you.

15          Two things that you made a request, I made

16   those changes in the instructions.  I just want to

17   make sure that you discussed them with Ms. Robinson,

18   let's see.

19          I need to -- I had that -- I left -- I

20   left the actual page in chambers there, I thought I

21   had it, these are your old instructions that were

22   marked up, but there was another paragraph, a

23   sentence or two further finding, in that language I

24   did include, I also changed, made the other request

25   that you made about that third element.

1              **MR. BIGGERS:**  Your Honor, I believe it's

2       on -- the first change was that additional

3       paragraph --

4              **THE COURT:**  Yeah.

5              **MR. BIGGERS:**  -- started with first, you

6       do not have to find the interstate commerce is

7       actually affected --

8              **THE COURT:**  That's on page 11.

9              **MR. BIGGERS:**  -- that's on page 11.

10             I discussed that with defense counsel and

11      she is fine with that.

12             **MS. JERMANN-ROBINSON:**  No problem.

13             **MR. BIGGERS:**  And in addition, and I do

14      see it on page 11.

15             **THE COURT:**  Yeah.

16             **MR. BIGGERS:**  The other change with regard

17      to the defendant's attempt to actual obstruct

18      interstate commerce.

19             **THE COURT:**  The third element.

20             **MR. BIGGERS:**  The third element on page --

21      shown on page nine.

22             **THE COURT:**  There it is, yes.

23             **MR. BIGGERS:**  That is satisfactory to the

24      goverment as well.

25             **THE COURT:**  I made that change in

1    language, too.  Okay.

2              **MS. JERMANN-ROBINSON:**  That's fine.

3              **THE COURT:**  All right.  Do you all need a

4    few minutes to keep going over this?

5              All the things we discussed yesterday, I

6    believe I have made those changes and included them.

7    The main ones, my concern was the verdict page on

8    the 924(c)'s, and then I changed the identification.

9              **MS. JERMANN-ROBINSON:**  I think they're

10   fine, Your Honor.

11             **MR. BIGGERS:**  Fine with the government and

12   we are ready to proceed into closing, Your Honor.

13             **THE COURT:**  All right.

14             **MS. JERMANN-ROBINSON:**  I do have one

15   request, Your Honor.

16             **THE COURT:**  Yes.

17             **MS. JERMANN-ROBINSON:**  I would like to

18   have the podium brought more to the middle in front

19   of the jury.  I know you don't want anyone blocked,

20   but if the court would permit me to do that, I won't

21   move it until after Mr. Biggers --

22             **THE COURT:**  That's fine, that is not a

23   problem.

24             **MS. JERMANN-ROBINSON:**  Thank you, Your

25   Honor.

 1          **THE COURT:**  Maybe Mr. Herrin or either one

 2  of the prosecutors or our security officer can help

 3  you move that.

 4          **MS. JERMANN-ROBINSON:**  Thank you.

 5          **THE COURT:**  But it's no problem to move it

 6  out in the middle.  There is a wire for the

 7  microphone, so please be careful, I would hate to

 8  see that thing tumble over.

 9          **MS. JERMANN-ROBINSON:**  I will.

10          **THE COURT:**  Okay.

11          **MR. BIGGERS:**  I guess -- I guess one

12  request, Your Honor.

13          May I obtain one of the exhibits?

14          **THE COURT:**  Sure, uh-huh.

15          **MS. JERMANN-ROBINSON:**  I will say I

16  separated some out.  But --

17          **MR. BIGGERS:**  I think it's one of the

18  videos, the copy we have of the video is not playing

19  this morning and I need to see it.

20          **THE COURT:**  Okay, that's fine.

21          Okay.  Obviously both sides have full

22  access to use of all of the exhibits, so that is not

23  a problem.

24          **MR. BIGGERS:**  I speak with Mr. Herrin

25  briefly.

 1              **THE COURT:**  Go ahead.

 2              Mr. Biggers -- Ross, it's your old copy.

 3              There is a typo on page eight that I have

 4     corrected, a couple of words were removed,

 5     definition of robbery, and right at the very bottom

 6     on page eight I made that change.

 7              It reads robbery is the unlawful attempt

 8     of taking, and it should read robbery is the

 9     unlawful taking.  The copy that will go back to the

10     jury, that change has already been made.  Okay.

11              Anything else?

12              I think we are ready to go ahead and begin

13     the arguments.

14              **MS. JERMANN-ROBINSON:**  Yes.

15              **MR. BIGGERS:**  That's correct, Your Honor.

16              **THE COURT:**  All right.  No one is going to

17     be arguing for two hours, are they?

18              I don't think I'm going to have put a

19     limit on anyone.  All right.

20              Okay.  Let's bring in the jury.

21              (Jury present at 9:25 a.m.)

22              **THE COURT:**  All right.  Good morning,

23     folks.

24              **A JUROR:**  Good morning.

25              **THE COURT:**  I hope you had a good evening.

1    Okay.  We worked through all of the things that we

2    need to and we are now ready to proceed.  Both sides

3    are ready with their -- their closing arguments and

4    afterwards we will go straight into the instructions

5    that I have for you.  Okay.

6              So I'm going to stop talking and turn it

7    over to the lawyers.

8              Now remember that the government goes

9    first, they will be able to argue.  Then the

10   defendant will have a full opportunity to argue.

11   And assuming they do, the government has one last,

12   what we call rebuttal because they have that burden

13   of proof.  And afterward I will go straight into the

14   written instructions.  The law requires that I

15   actually read them to you.  Okay.

16             So bear along with us, it won't be too

17   much longer and you will begin deliberating on the

18   case.

19             All right.  So we turn to the government.

20   I believe it will be Mr. Stringfellow.

21             **MR. BIGGERS:**  Yes, Your Honor.

22             **THE COURT:**  You may proceed.

23             **MR. STRINGFELLOW:**  Thank you, Your Honor.

24             **THE COURT:**  Uh-huh.

25             (Closing arguments.)

458

1                    (Jury Instructions.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

       I, Lynn Dudley, do hereby certify that the foregoing 458 pages are, to the best of my knowledge, skill and ability, a true and accurate transcript from my stenotype notes of the trial of on April 21 thru 24, 2014, in the matter of:

United States of America

vs.

Robert Drew

Dated this 28th day of August 2014.

                ------------------------------
                Lynn Dudley
                Official Court Reporter
                United States District Court
                Western District of Tennessee