**(UNREDACTED)**

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

---------------------------------------------------

UNITED STATES OF AMERICA,      )
                                )
           Plaintiff,      )
                                )
          VS.            )  NO. 13-20067
                                )
ROBERT DREW,               )
                                )
          Defendant.      )

---------------------------------------------------

LYNN DUDLEY
OFFICIAL REPORTER
923-A FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103

A P P E A R A N C E S

Appearing on behalf of the Plaintiff:

        EDWARD L. STANTON, ESQ.
        UNITED STATES ATTORNEY
        SUITE 800
        167 NORTH MAIN STREET
        MEMPHIS, TENNESSEE 38103
        BY:  C. DAVID BIGGERS, JR., ESQ.
             SAMUEL R. STINGFELLOW, ESQ.
             ASSISTANT U. S. ATTORNEYS


Appearing on behalf of the Defendant:

        DORIS RANDLE-HOLT
        FEDERAL PUBLIC DEFENDER
        200 JEFFERSON AVENUE
        SUITE 200
        MEMPHIS, TENNESSEE 38103
        BY:  MARY C. JERMANN-ROBINSON
             NEEDUM LOUIS GERMANY, III
             ASSISTANT FEDERAL DEFENDERS

## W I T N E S S   I N D E X

| WITNESS | PAGE | LINE |
|---|---|---|

NO WITNESSES

# E X H I B I T  I N D E X

| EXHIBIT NUMBER | PAGE | LINE |
| --- | --- | --- |

NO EXHIBITS

**THURSDAY MORNING**

**JULY 24, 2014**

The sentencing hearing in this case began on this date, Thursday, July 24, 2014, at ten o'clock a.m., when and where evidence was introduced and proceedings were had as follows:

------------------------

**THE COURT:** Good morning, everyone.

Bring in Mr. Drew, please.

(The defendant is present in the courtroom at 10:14 a.m.)

**THE COURT:** All right. Good morning, everyone.

**MR. ROBERT DREW:** Good morning.

**MS. JERMANN-ROBINSON:** Good morning, Your Honor.

**MR. BIGGERS:** Good morning.

**THE COURT:** For the record, this is the United States versus Robert Drew set today for sentencing.

Memory serves me correctly the matter went to trial and the jury returned verdicts of guilty on all of the counts against Mr. Drew.

1          We are here today to fix the sentence

2    under the statutes and guidelines and things of that

3    nature.

4          I need to first ask if both sides are

5    ready to proceed.

6          Mr. Biggers.

7          **MR. BIGGERS:**  Your Honor, the government

8    is prepared to proceed on today.  And I want to make

9    sure that the court has a copy of the position

10   paper.

11              **THE COURT:**  I've read it.

12              **MR. BIGGERS:**  Thank you.

13              **THE COURT:**  Ms. Robinson.

14              **MS. JERMANN-ROBINSON:**  We're ready, Your

15   Honor.

16              **THE COURT:**  Just for the forward, as I

17   normally do I like to go through the guidelines as

18   well as the applicable statutes involved in this

19   case, that will be our starting point.

20          There are some objections to some of the

21   provisions in the Presentence Report.  As I

22   indicated, the Presentence Report has been prepared,

23   both sides have filed position papers.  I reviewed

24   all the material, also gone over the facts of the

25   case, the notes that I took during the trial, things

of that nature.

Of course, after we get the guidelines and the proper statutes in place and all, then we will proceed with the second phase of sentencing.

Although I will note for the record that the statutes really control, in -- in large part, the sentences that I can fix, although there is some flexibility with some of the offenses, you know, the firearms charges, of course, are controlled by statute. And, of course, I will hear from both sides in that regard as we go through.

But let me start with going through the Presentence Report calculations, get our starting point in place, then I will hear from both sides. I will hear first from the defense, of course, because of the objections that have been filed. The government has no objections, it's my understanding, but has responded to the objections filed by the defense.

The calculations really begin paragraph 14 of the Presentence Report on page 16. There's certain groups of calculations that are involved in this case. There were two actual -- well, attempt robberies that the defendant was found guilty of on the same date, two locations roughly 15 to 20 miles

1    apart, if I'm not -- if memory serves me, one of the

2    attempts occurred in Memphis, the second one

3    occurred in or near Oakland, Tennessee right along

4    on Highway 64.

5            Count -- group one, felon in possession of

6    a firearm, attempt armed robbery of the Hickory

7    Center Market, you see that on -- on -- in paragraph

8    14, counts one and three are grouped for guideline

9    calculation purposes as set out in paragraph 15.

10           Base level offense for this offense and

11   the section of the guidelines also provides that the

12   defendant committed any part of the offense

13   subsequent to having at least two prior felony

14   convictions, crimes of violence or controlled

15   substances, then the base offense level is 24.

16           Of course, I believe there's an objection

17   to this section, we will talk about that shortly.

18           So we start off with a 24 for this group.

19           There are no adjustments either way.  And

20   so the adjusted offense level is 24.

21           Count group two, we see paragraph 22,

22   carrying, using, brandishing a firearm during and in

23   relation to a crime of violence, the jury did return

24   a verdict of guilty on that count.  And the

25   indication was that they found beyond a reasonable

doubt that the defendant brandished a weapon during
that offense.  And so the sentence is not less than
seven years confinement and up to -- to life and has
to be served consecutive to group three, robbery
affecting commerce, attempt robbery of the Kentucky
Fried Chicken, we see at paragraph 23 the base
offense level for this one is a 20.  There are no
adjustments either way in that regard.  And so the
adjusted offense level is a 20.

And group four, again, using, carrying,
brandishing a firearm during and in relation to a
crime of violence, a robbery in this case, it's an
attempt robbery.  Of course, the statute provides
that the sentencing range is not less than 25 years
up to life imprisonment.

Then we have the multiple count
adjustments.  Okay.  We see there the adjusted
offense levels for really group one and group three
for the robberies, one unit for each.  That gives us
a total number of units at two.  The greater of the
adjusted offense levels is a 24.  So you add in the
two you see at paragraph 35 and then -- I'm sorry --
32, gives us a combined adjusted offense level of
26.

All that is for naught because in

paragraph 34 we see that because of the defendant's criminal history, he is a career offender. And that offense level is a 32. Of course, there's an objection there.

Paragraph 35 shows that he is also an armed career criminal, which is an offense level of a 34. And I think the higher guideline range is the one that, under the guidelines, we are to use. And so the total offense level is a 34.

There's no points for acceptance of responsibility.

And as mentioned, the defendant has quite a few entries on his criminal history. And the sum and substance of it we see at paragraph 51 on page 15, criminal convictions that are set out on the previous pages gives us a criminal history score of 23.

The defendant committed the offense, the offenses involved in this case while on parole. We see at paragraph 52 all of the offenses that he was on parole for. Therefore, two points are added to his criminal history score.

So we have a total criminal history score of 25. And that gives rise to a Criminal History Category of VI.

And it is an armed career criminal, which gives us a Criminal History Category of VI anyway.

And then for the sentences that we're looking at, we see paragraph 82 on page 21, counts one and four the maximum term of imprisonment is 20 years on each of those.

Count Two, that was one of the 924(c)'s, the minimum term of imprisonment is seven years up to life, as I indicated before.

Count Three, the minimum term of imprisonment because of his criminal history, that's a 922, possession of the firearm, the minimum term of imprisonment is 15 years and it's up to life.

Count Five, that's the second 924(c) conviction, 25 years is the minimum and up to life.

Paragraph 85, based on the total offense level of 34, Criminal History Category of VI, that gives us an imprisonment range for counts one, three and four of 262 months to 327 months.

And then, of course, we have the mandatory minimum for counts two, three and five that are also in place, and they are set out in paragraph 86.

There's also a question about an undischarged term of imprisonment. We'll address that in the regular course, and that is identified

1   and set out in paragraph 88.

2           That's kind of a summary of the decisions

3   and issues that have to be dealt with today.

4           Am I accurate in that, probation?

5           **THE PROBATION OFFICER:**  Yes, Your Honor.

6           **THE COURT:**  Did I get it right.  All

7   right.

8           **THE PROBATION OFFICER:**  You did.

9           **THE COURT:**  Mr. Biggers, anything?

10          **MR. BIGGERS:**  Nothing from the government,

11  Your Honor.

12          **THE COURT:**  And, Ms. Robinson?

13          **MS. JERMANN-ROBINSON:**  Insofar the

14  calculations?

15          **THE COURT:**  Yes.

16          **MS. JERMANN-ROBINSON:**  No -- no problems

17  with that.

18          **THE COURT:**  All right.  Let's go ahead and

19  deal with the objections at this time.

20          And let me hear first from Ms. Robinson.

21          **MS. JERMANN-ROBINSON:**  Basically they are

22  for all purposes of preserving the record, Your

23  Honor.

24          **THE COURT:**  I understand.

25          **MS. JERMANN-ROBINSON:**  Our -- our

1   objections A and B, I guess, on paragraphs -- the

2   convictions shown in paragraphs 43, 48, and I think

3   those are all simple robberies, meaning they're

4   robberies, I guess, without a firearm.

5        We have to concede that there is clear

6   case law that, in fact, they are crimes of violence,

7   but that case is up on cert. --

8        **THE COURT:** Yeah.

9        **MS. JERMANN-ROBINSON:** -- just for the

10   record, I would like to preserve that the

11   convictions in paragraphs 43 and 48, our assertion

12   is that they are not crimes of violence or violent

13   felonies, whether it's guideline or by the

14   statute --

15        **THE COURT:** Right.

16        **MS. JERMANN-ROBINSON:** -- but armed career

17   criminal.

18        Also, for the record, Your Honor, we

19   object to the -- to the 922(g) case, the felon in

20   possession of firearm, that that matter was not --

21   his prior convictions weren't charged in the

22   indictment, they weren't proven to the jury.

23        I know that *Almendarez-Torres* is the law

24   of the land at this point. However, there's several

25   things that keep percolating -- percolating around

1    and I think in a case like this it's important to

2    preserve, that should the law change, that perhaps

3    he would have some benefit there.

4           Also, in line with that is 218 USC 922(g),

5    I'd say to, Your -- say that statute is void for

6    vagueness, it's unconstitutional.  There's issues

7    with whether it's a crime of violence, and it's all

8    over the place.  Anytime -- every time the court

9    comes down, even Sixth Circuit or Supreme Court, we

10   get surprised by what is and what is not.

11          The question of what is on occasion

12   separate than one another again is unclear, Justice

13   Scalia was -- ranted pretty well in one of the most

14   recent cases about how the court, the police

15   officers and lawyers don't have much direction

16   because it's such a vague statute.  So I preserve

17   that, also, for the record.

18          And, lastly, as I actually put it into

19   other sentencing factors, more under 3553, but since

20   that doesn't really get me anywhere, I would like to

21   preserve the fact that Mr. Drew, he is a 67 IQ, and

22   it has been found that those individuals have an

23   intellectual disability and those that are

24   intellectually disabled are treated differently.

25   And I'm raising and Eighth Amendment objection for

the sentences both 18 U.S.C. 922(g) and 18 U.S.C.
924(c) as those sentences that result in the statute
are excessive, cruel and unusual particularly
because we have an intellectual disability for
Mr. Drew, and that's -- and that's in the record and
in the Presentence Report.

       **THE COURT:**  Is that in your position
paper, too.

       **MS. JERMANN-ROBINSON:**  It is.

       **THE COURT:**  All right, thank you.

       Let me hear now from Mr. Biggers.

       **MR. BIGGERS:**  Your Honor, first,
addressing the objections filed by the defendant,
specifically to the findings that the robbery
convictions of the defendant are violent felonies
for purposes, not only of the guideline
calculations, but also the Armed Career Criminal
Act.

       The government responded to those
objections in its position, and as the defense
counsel point out, recent case law from the Sixth
Circuit here in 2014 clearly establishes that
Tennessee's robbery statute does constitute a
violent felony for purposes of both the guideline
calculations and the Armed Career Criminal Act.

1          In addition to that, the government will

2    add that even if the court were not to consider the

3    two sets of convictions in, I believe in paragraphs

4    43 and 48, the defendant still has three -- three

5    other armed robbery convictions that would count and

6    still qualify him as both an Armed Career Criminal

7    and would subject him to that enhancement in the

8    sentencing guideline.

9          Going to the second set of objections, the

10   defense has brought -- raised today with regard to

11   922(g), the statute itself, those objections would

12   not, I don't believe, were not raised in the

13   defendant's position paper, but as the defense

14   counsel pointed out the case law is well-established

15   by both precedent and statute that 922(g)(1) and

16   922(g) as a whole in Title 18 is constitutional.

17   And that the government is not obligated to set

18   forth the prior convictions that would subject the

19   defendant to the Armed Career Criminal Act and the

20   indictment.

21         So based on that, Your Honor, the

22   government submits that those objections, too, must

23   be overruled.

24         The last -- defendant's last argument,

25   which I think she stated today as an objection based

1   on his IQ, the government submits that has no

2   bearing on the calculation itself.  And not only

3   that, but for later argument the defendant is

4   competent.  There is no question as to his

5   competency.  There is no question as to his

6   competency when he committed the offense for which

7   he is before the court today and ask that be

8   overruled as well.

9           **THE COURT:**  All right, thank you.

10          Anything further?

11          **MS. JERMANN-ROBINSON:**  No, Your Honor.

12          **THE COURT:**  All right, thank you.

13          **MS. JERMANN-ROBINSON:**  Other than I

14  believe that Mr. Drew would like to allocute.

15          **THE COURT:**  We're -- I mean, he can now

16  but normally when I go through the sentencing

17  factors, that's when I hear from them.

18          **MS. JERMANN-ROBINSON:**  That's fine, Your

19  Honor, I couldn't remember.

20          **THE COURT:**  Okay.  Well, I think as both

21  of you know, I'm going to have to overrule the

22  objections that have been set out in the defense

23  position paper.  There's an objection to the use of

24  and the way that the robbery convictions are used

25  with regard to Mr. Drew's criminal history, whether

1    or not they are violent offenses for purposes of the

2    guidelines, and also for purposes of the statutes

3    involved.  Although the objections are made, defense

4    counsel did make reference to and concede *United*

5    *States versus Mitchell* 743 F.3rd 1054, it's a Sixth

6    Circuit case that came out earlier this year, 2014,

7    robbery is a violent offense as far as the State of

8    Tennessee is concerned.

9           And so I understand the reason for lodging

10   the objection.  But the objection to use of those

11   and the way that the convictions are used is going

12   to have to be overruled.

13          The defense did include in the Presentence

14   Report an objection because of his IQ.  And those

15   problems, as far as mental capacity are concerned,

16   are included in the Presentence Report.  I've read

17   those and he was sent, and we will see starting at

18   paragraph 69 of the Presentence Report, he was

19   evaluated several times over the years, he was

20   evaluated at Butner, North Carolina, the federal

21   correctional institute there, and summary of the

22   findings is included in the Presentence Report,

23   which I have reviewed along with the entire report

24   that was returned.

25          And there's just no issue with regard to

1    his competency.  I understand about the -- the IQ

2    and the finding that's set out in the position paper

3    at 67, yet we see as part of the analysis that was

4    made at Butner, because of their interactions with

5    him, the more appropriate diagnosis for him, I see

6    at page 19, is characterized by an IQ score within

7    the range of 71 to 84.  Now it's still not, you

8    know, not huge, but it is somewhat of a difference

9    from the six -- 67.

10            As far as that being a sentencing factor,

11   we will take that into account later.  But as far as

12   the calculations are concerned, I don't think that's

13   an issue.  And for those purposes if an objection is

14   made as far as the calculations are concerned with

15   regard to his IQ, that will have to be overruled.

16            And so, as I said, in light of the state

17   of the law as far as his prior convictions are

18   concerned I will have to overrule the objections and

19   the outline of the guidelines as well as statutory

20   provisions with regard to sentencing.

21            Unless there are additional objections

22   that I have to take up, those will become the

23   findings of the court.

24            Anything further from the government?

25        MR. BIGGERS:  Nothing further from the

government, Your Honor.

        **THE COURT:**  Okay.  And then from the defense?

        **MS. JERMANN-ROBINSON:**  No, Your Honor.

        **THE COURT:**  All right.  Well, I understand about the objections, they are lodged for the record, but I have to overrule the objections.  And the calculations that I have outlined will become the findings of the court as well as the other facts and calculations involved in the Presentence Report.

        We're going to go ahead and move to the next phase of sentencing.  And that is the 3553 factors.  I do have to review those and take them into account because of the attempt robbery convictions that we had, I have a statutory mandatory minimums as far as the firearms are concerned.

        But I will hear from Ms. Robinson now -- I'm sorry -- from Mr. Biggers now with regard to the sentencing factors.

        **MR. BIGGERS:**  Your Honor, I won't belabor the point as to sentencing, the court has already acknowledged that the statute pretty much rules in this particular case when it comes to sentencing.

        As the government submitted in its

position paper an appropriate sentence in the
particular case is a total sentence of 47 years on
all counts.

The government submits that the mandatory
180 month sentence as required on the felon in
possession of a firearm count charged in Count Three
should be run concurrent with the two attempted
robbery counts charged in counts one and four.

And the two 924(c) counts which are
required to run consecutive must all run
consecutive.

But just -- the government would add that
this particular case before the court dealing with
the defendant Robert Drew is the reasons why
congress implemented the Armed Career Criminal Act
and career offender. The defendants like this, who
have continued to engage in conduct, that not only
endangers the lives of others, but also continues to
put themselves at risk for monetary gain, that's the
basis -- that's the reason that the need for the
Armed Career Criminal Act as well as the career
offender, and the 924(e), that this defendant, in
looking at the facts of this particular case, had a
gun, armed gun, loaded gun, put it in the face of
two innocent victims, two young innocent victims

only working to make money, one, Mr. Baker working at a KFC restaurant here in Memphis, and the other, Mr. Harris, working at a Hickory Center Market right at the outskirts of Oakland, Tennessee, and ordered them to give him money.

He was wearing the same clothing, there is no question the jury already found that the defendant committed these acts, but he committed both of these acts and on the same night.

That in and of itself is very serious conduct, very serious conduct that put two different individuals' lives at stake in addiction to the defendant.

Look to the criminal history, or the history and the nature of the defendant himself, looking at his criminal history the court would point out defendant had multiple robbery convictions, not just simple robbery the defense pointed out in paragraphs 43 and 48, he had several other armed robbery convictions.

As the court already noted, even based on the armed robbery convictions, he would still be an armed career criminal, the armed career -- the armed robberies in 41, 42 and 44 are the paragraphs in the Presentence Report. He has a history of robbing

people with firearms.

He was arrested originally in 1981 for a series of robberies, for four separate robberies that occurred between June and July of 1981. Of the four robberies, three of those were armed robberies.

After being taken in custody for that and being sentenced to a significant sentence, he was released on parole in 1986, August of 1986. Within four years he would be -- picked up a new series of robberies, at least eight separate robberies. That was in January of 1990. He was taken back into custody at that point.

He escaped from custody in June of 1995. Within days, I believe a week he was taken back into custody on that. He was released in April of 2011 and within a year, December of the following year he picked up these two crimes for which he is before the court today.

Looking at that criminal history, clearly details how the importance of the 3553(a) factors, specifically the serious nature of the offense, the nature and history of the defendant, the need to promote respect for the law and afford adequate deterrence.

And, lastly, but most importantly in this

1   particular case, the need to protect the public from

2   the defendant.  There's clearly a need to protect

3   the public from the defendant.  And the government

4   asks that you impose a sentence of 47 years as is

5   required by statute and supported by the record.

6           **THE COURT:**  Thank you, Mr. Biggers.

7           Ms. Robinson.

8           **MS. JERMANN-ROBINSON:**  Well, Your Honor,

9   the court can't really vary from the statute that

10  controls this, but for the record, no one was

11  injured in these robberies.  The court can take that

12  into consideration.  No money was gotten, the court

13  can take that into consideration.

14          Mr. Drew obviously has some intellectual

15  deficits.  The case that I cited for the court, the

16  *Hall versus Florida* case.

17          One other thing that the court mentioned

18  is that, unlike in *Atkins*, the state of Florida was

19  using a bright line marker about what an

20  intellectual disability of 70.

21          And what -- what *Hall* really did bring out

22  is that there's a standard deviation, five points

23  one way or the other.  And even if 71 is correct,

24  they could deviate downward five points.

25          So I think that from his record, from

1   what's shown in the Presentence Report that he does

2   suffer from intellectual disability, and that's

3   something else the court can consider.

4   This is a life sentence, did congress

5   intend for this to be a life sentence, I don't think

6   so, but that is something that the court can take

7   into consideration.

8   And with reference to -- of course,

9   Mr. Drew maintains his innocence, as he did at the

10  trial of this matter, but it seems very clear to me

11  that there likely was another party involved.  It

12  doesn't come out in the proof, but we did know that

13  there was some distance to be traveled between the

14  two establishments.  And there was never any proof

15  about how that distance was traveled.  And I just --

16  I suspect there may have been some pressure put on

17  the individual that committed these robberies and he

18  was out in the cold one way or the other.

19  But, again, Mr. Drew maintains his

20  innocence, there's some unanswered questions.  And I

21  think the court can consider that in determining the

22  sentence.

23  Again, our hands, mine, yours, are pretty

24  tied by what the statutes are.  So I will just leave

25  it at that, Your Honor.

1          **THE COURT:**  I guess the only flexibility

2     that I have is the actual sentence to impose for the

3     attempt robberies.

4          **MS. JERMANN-ROBINSON:**  That's -- that's

5     right, Your Honor.

6          I'd ask the court, seems like 47 is --

7     well, he's going to die in jail, I mean, that's what

8     is going to happen unless he's got some kind of

9     super powers that I'm not aware of.  And I think

10    that's far too much to happen to him for these

11    botched robberies, for lack of a better word.

12         Again, not taking anything from the

13    victims, they were frightened, but no money was

14    taken, no one was hurt, and life sentences were

15    meant, I think, for individuals who cause more harm

16    than this.

17         And it appears that the individual who did

18    commit this was intoxicated, impaired.  It doesn't

19    excuse the crime, but it does say that perhaps these

20    are not as serious as other robberies.

21         I will leave it at that.

22         **THE COURT:**  All right, thank you.

23         Mr. Drew, you do have the right to make a

24    statement, we call it allocute.  But at this time

25    your lawyer has indicated that you do --

1          **MR. ROBERT DREW:** Yes, sir.

2          **THE COURT:** -- want to make a statement to

3 the court. If you want to make it, you don't have

4 to if you don't want to --

5          **MR. ROBERT DREW:** I want to, Your Honor.

6          **THE COURT:** -- but if you want to make a

7 statement, I will need to place you under oath.

8          **MR. ROBERT DREW:** Yes, sir.

9          **THE COURT:** So why don't you all come

10 forward at this -- this time to -- to the -- the

11 podium, and I will hear from you at this time,

12 Mr. Drew.

13          Okay. Why don't you raise your right

14 hand.

15          **MR. ROBERT DREW:** Uh-huh, sure.

16          **THE COURT:** Do you solemnly swear or

17 affirm, under the penalties of perjury, the

18 testimony that you are about to provide the court in

19 this matter will be the truth, the whole truth and

20 nothing but the truth, so help you God?

21          **MR. ROBERT DREW:** Yes, sir.

22          **THE COURT:** All right. You can put your

23 hand down.

24          Go ahead.

25          **MR. ROBERT DREW:** Your Honor, I'm here

1  today to -- to put this on the record that I left

2  out during my trial that I wanted to, but my past

3  history wouldn't allow me to due to the fact that so

4  many thing's I wanted to say, but today is where I

5  want to make clear to you, Your Honor, that my past

6  history, my bank robberies and robberies that I done

7  in the eighties, Your Honor, everything that I've

8  done wrong, that I plead guilty to, these two counts

9  of robbery that was put on me because of my past

10  record, I -- I disagree with everything because my

11  thought I already had proved that I wasn't the

12  robbery when the polices took me to the place, the

13  scene where the crime at, where you had said

14  something in court, you said that me and my attorney

15  was making a big complaint about me standing in --

16  beside the police car at the scene of the crime

17  where the crime had happened at.

18        Your Honor, at that night they took me to

19  the scene of the crime and they zipped up my coat

20  and everything to make me look more like the person

21  what we see here because of the fact where the

22  clothes that I had on, I didn't have no mud on me,

23  nowhere.  My facts is to proof that I didn't have no

24  mud on me.

25        You look at the video, that coat that --

1    that what they got, that coat don't have mud on it.

2    The coat that they given me trying to make me look

3    like the person, there's mud on that coat.

4          Your Honor, I go on to say this here, I

5    get back to the words of the profession coming from

6    you that you said that you didn't see where that

7    made a big difference by me standing in between

8    those two police with handcuffs on.

9          Your Honor, the fact that that violated

10    Miranda right to due process because the fact is I

11    asked them for my attorney to be present with me

12    because they had already laughed at me for my past

13    record. Said, well, you -- you had a gun and you

14    robbed a bank. I said, I never had a gun.

15          So I knew it wasn't the time for me to try

16    to argue with the polices out there on the -- on the

17    road where a crime had been committed.

18          So I asked for an attorney and they denied

19    me. So I moved on from there -- I moved on from

20    there.

21          But, Your Honor, as far as what I want to

22    put on the record is that all through the

23    investigation there's never were they brought up

24    anything about the white car until April the 24th.

25          And I made it so clear to my attorney, I

1  made it so clear to the U. S. Marshal that said that

2  he had been on the force for 19 years, I made it so

3  clear to him at that point that when he came out to

4  Somerville and picked me up, I told him the same

5  identical thing I told the police, he said, well,

6  what are you -- because I had guys in -- I -- I wear

7  glasses for reading, but my vision is a little bit

8  off at night, true enough, but the car that I walked

9  up on I took it for a beige car.

10          And I, and through the investigation, I

11  won't say nothing here today that's not on record,

12  and we -- we talked about that with the detective, I

13  told my attorney about the car.  The car -- they

14  stopped on the side of the road and said this that

15  is Drew Hindu, I told you what he said, he said

16  that's Drew Hindu.

17          Somebody called me, and I had been

18  drinking, true, I had been drinking.  As I get to

19  walk to their car to see the faces of them who said

20  that's that Drew Hindu, that gun car, so I ran back

21  off the car.  I don't want to get no closer to the

22  car, I ran back from the car, the car that I said

23  was a beige car.

24          I couldn't tell them what the license

25  number, I couldn't tell them, I know there was three

guys in there, I know that much, I got that close

enough before the gun car told me for me to get away

from the car, I got that close.

But I said all of that to say, Your Honor,

that that was hidden from the court. My attorney

asked that U. S. Marshal here that I -- did he tell

you -- did you do an investigation on him for what

he told you that what had happened. And he said no.

Your Honor, that -- for them to put a car

in with me, I thought it was supposed to be affront

to the court that what we're telling with is the

car, because the facts were, if the polices, if

there's a car there at the time that I was there,

what was the reason where the police didn't take the

car under investigation. Because I already had made

my statement. We standed beside the road for 35 or

40 minutes alone in the police car. For what reason

I don't know. Then we went on around to the scene

where the crime at. And Jesse Dodson came out, not

Jesse Dodson -- suggested -- the guy work at the

place, he came out the store, reviewed me and then

he went back in, he went back in and I'm standing

between the two police cars in handcuffs. And he

said that the guy, the coat was like mine.

So far he went on to Somerville, Tennessee

and said that he don't -- he never said that it was
me but he said it was a coat like mine.  He said it
again, and the record would show no different that
what I'm, standing here today saying, and he said it
was a coat like mine.

But when we come here on April the 24th,
he said -- would you let the record show he got up
and in court identification saying he identified me
as the victim of the offense.  A person who never
came in contact with him period.  Never came in
contact.

And, Your Honor, just not to hold you up
too long today, I just want to put this on the
record, Your Honor --

**THE COURT:**  Uh-huh.

**MR. ROBERT DREW:**  -- that the more face
from the computer was did the 24th here to take a
mask, take -- take -- take a mask off the individual
that on the video and mold my face, Your Honor, let
the record show that that mold face don't look like
my face what you are looking at today.  If you look
back through the record and see, that's not my face.

And that's a clear that -- so clear
that -- that the right hand of the -- in the video,
there's no glove.  Anybody can see there's no glove

on that hand.

If the person what had their hand, I thought that is what would have proved my innocence. A person who have a hand on the gun, I thought would leave some type of fingerprint on it. But he said he done so much of a good job for being for 14 years, but he didn't clear himself with fingerprints. And I was down there watching him fingerprint. We went outside and we smoked cigarettes and everything. And he thought that I may could be able to help him in the situation. But I couldn't help him in the situation because he wouldn't come clean. He talked about it on the radio, and -- and the record will show that he said that go by my sister's house at 4782, her address, and check and see whether there was a white car there, and if there was a white car there, make no mind and give him a call. I told my attorney about that earlier in this here.

But by doing and reading the bible and understand, my authorities to rule over me, I'm going to obey them. There's nothing that I can do but put the courts upfront that it happened to me, put this on the record and let it be known, it -- it was so good thing that, because that I was an

1  ex-convict that showed prejudice against me, not

2  treat me as the same you would treat anybody else,

3  to show equal protection of the law, it's proof of

4  the fact that's the way they done me.

5        My parole officer told me, said the facts

6  in here that you being up under arrest, says with no

7  reason them lights wasn't running, when the lights

8  was running on the police car that my understanding

9  was telling me they had been filming whatever is

10 going on.  I don't know that much about this, the

11 police, the security, but that's what she said, when

12 the lights is on, the camera is on, it's taking

13 everything.  But the camera didn't take up those

14 guys stood behind that police car for 30 minutes

15 before they took me to the scene of the crime.

16       The gun never came from up -- the record

17 would show, if the light would show, the record

18 would show they never got a gun off Robert Drew

19 because Robert Drew never had a gun.

20       And -- and also the record would show that

21 in my eighties time of robberies, Robert Drew never

22 was carrying a gun.  Robert Drew along with the

23 people with guns, which I was just as much in the

24 wrong as they were.

25       Also, the record would show that at the

time that the crimes and the murders were taking place, Robert Drew wasn't with the guy. Robert Drew was the one who turned the guys in.

I mean, I'm not trying to make myself a good guy, because I have committed a crime, but when I went and done my time for these bank robberies, I'm not supposed to have do time all over again because they said that, well, he's capable of doing anything, he could have done it.

Your Honor, I stand here today, I don't have a health problem, but there's no reason that anybody could see that I would be able to run from 16 miles in 40 minutes, it would have took me an hour, almost an hour to walk from that place to my house, there's no way that -- I couldn't -- it was impossible.

And the car is brought about the fall for insufficient evidence, I'm through with this for the day, Your Honor, I don't have anything to say.

**THE COURT:** Okay. Thank you, Mr. Drew.

**THE MARSHAL:** Stay up here.

**THE COURT:** Now you can stay right there.

If you all prefer to go back to counsel table, that's fine, we will get finished.

**MS. JERMANN-ROBINSON:** That's fine.

1       Is there a Kleenex, Your Honor?

2           **THE COURT:** Anything further,

3   Ms. Robinson?

4           **MS. JERMANN-ROBINSON:** No, Your Honor.

5           **THE COURT:** Mr. Biggers?

6           **MR. BIGGERS:** Your Honor, briefly.

7       I'm not going to comment on the

8   defendant's statements other than I believe he

9   misstated a lot of facts that occurred throughout

10  the trial.

11          **THE COURT:** I'm familiar with the trial.

12          **MR. BIGGERS:** I just say that for the

13  record, he misstated a lot of facts, Mr. Harris

14  never identified him in the courtroom, that is just

15  inaccurate.

16      But going to Ms. Robinson's argument

17  before about congress not intending this to be a

18  life sentence.

19      But for the defendant's extensive criminal

20  history of robberies, this would not be a life

21  sentence. He picked up his first robbery when he

22  was 24 years old. It's only the fact that he

23  continued until the age of 25 -- of 55 committing

24  robberies that the sentence of 47 years is

25  ultimately a life sentence in this particular case.

1    And, furthermore, just add, that that

2  sentence of 47 years, of 564 months is below the

3  guideline ranged recommended in this case.

4    **THE COURT:**  Okay.  All right.

5    Now is the time for me to go ahead and

6  make the independent determination about the

7  guidelines involved, impose a sentence with regard

8  to guideline calculations as well as the statutory

9  terms that are involved in this case.

10    As with any other case, I'm required to

11  impose a sentence that is sufficient but not greater

12  than necessary to accomplish the purpose of the

13  guidelines, the statutes as well as 3553.  And so I

14  am taking into account everything in making --

15  making the final decision, the information contained

16  in the Presentence Report, the evidence that was

17  presented during the trial as well as the exhibits,

18  the videos that were included in the trial,

19  arguments of counsel, statements of Mr. Drew today,

20  and as always, and in this case the entire record

21  that is before me.

22    First, I have to take into account and --

23  and consider the nature and circumstances of the

24  offenses involved.

25    The two offenses, I have to say are in all

1    of the counts, they are serious offenses.  And I

2    don't make that finding lightly.  During the trial

3    there were videos, what happened in the -- in the

4    places, and the testimony from the victims involved

5    about what they did when the robber came in, pointed

6    the weapon at them, and their efforts to try to

7    getaway, ultimately not being able to give the money

8    to the individual and the individual left.

9            And so I don't say it lightly when I say

10   that these are very serious, most serious crimes.

11   And the ultimate sentence has to be, has to take

12   that into account.

13           I also have to recognize and consider the

14   history and specific characteristics of the

15   defendant involved in this case.  Both sides have

16   made reference to Mr. Drew's criminal history.  He

17   has made reference to it today in his statement,

18   admitted that he has done some wrong things, some

19   bad things, committed some acts in the past doesn't

20   really understand why that has to, you know, be

21   taken into account and punished all over again for

22   that.  So he's not really being punished all over

23   for that.

24           Yet and still, he has a long criminal

25   history.  He really hasn't been on the streets that

1    long because he continues to commit violent offenses

2    while he is out.  And then is re-incarcerated for

3    significant periods of time.

4              Make reference to paragraph 41, 42, 43,

5    44, those are the primary ones in the Presentence

6    Report as set out a huge number of robberies that he

7    was convicted of over the years.

8              But I also have to take into account

9    what's happened, the sentences that he got.  The

10   fact that he was released on parole.  I just pick

11   one of them.  Paragraph 41, robbery conviction, 15

12   years sentence, that was in '82, released in '86,

13   parole was revoked in 1990, and then he was

14   re-incarcerated.

15             He escaped from custody in 1995.  Returned

16   to custody after about a week or so.  Released on

17   parole in 2011.  That parole was revoked in 2013.

18   And expiration of that sentence actually in June of

19   this year.

20             But that, I mean, the other paragraphs

21   that I talked about are very similar.  And it just

22   demonstrates the difficulty in dealing with Mr. Drew

23   that even being released into the community after

24   serving portions of the sentence, how he has acted.

25             And so his criminal history, there are

1  counts, and it is being taken into account, but even
2  beyond the convictions, what he has done when
3  released into the community is a significant factor
4  that I have to take into account.
5          There is other information about Mr. Drew,
6  his -- his personal background and history is
7  included.  I made reference before about his mental
8  condition and the fact that he was evaluated at
9  Butner.  The results are included, and I have
10 reviewed all of that information.
11         But as he said, as far as his physical
12 condition is concerned, there are no issues in that
13 regard.
14         He was born in Oakland, Tennessee back in
15 the fifties, 1957.
16         And violence, as demonstrated in paragraph
17 60, was used by him, involved in his life at an
18 early age.
19         His family, he has four siblings.  And
20 what has happened with them over the years is
21 included in the Presentence Report.
22         But he has indicated that he has never
23 really had a family.  At an early age he began
24 working in the cotton fields.  He worked more than
25 attended school, and he did attend church when he

was a child.

So I take those type things into account in making the final decision.

He was married at one point with a Ms. Quarrels, but they divorced a few years after being married.  They have one child as a result of -- well, he has one child with a relationship with a different women.

And at the time, prior to his incarceration, he resided with a friend, a Tosha Jones on Highway 64, Oakland, Tennessee.

The probation office spoke with him -- spoke with Ms. Jones, and the information there is that the defendant is a hard worker, very nice and sweat person, but then sometimes something comes over him.  I think that's demonstrated accurately through the information that's presented in the Presentence Report and the information that I am taking into account today.

As I said, no physical issues.

There are some mental issues, but they are not really defenses, but I do take that into account in making the final decision.

As far as substance abuse is concerned, there are issues with alcohol.  Over the years he's

tried marijuana, powdered cocaine and even crack
cocaine.

There has been some substance abuse
treatment while incarcerated at a coupled of the
locations and he is interested in receiving
additional treatment.

As far as education is concerned, I think
he went Fayette Ware High School for sometime, I
think he completed the eighth grade, did not finish
and hasn't gotten his GED.

And there's very little as far as
employment history is concerned.

Over the years he has worked in
construction and landscaping, but there's little
employment history because he's been incarcerated
for lengthy periods of time.

There is no way that he can pay any type
of a fine.

And so now I'm to the point where I have
to impose the sentence. I'm taking all of that into
account in making the final decision as far as the
sentence is concerned.

Count One -- well, the reasons for the
sentence, and as the statute says, it has to reflect
the seriousness of the offense. I think I've

1  indicated that the offenses involved are very

2  serious offenses.

3          Must promote respect for the law.  That's

4  a significant factor that I have to take into

5  account because there has just been constant and

6  repeated acts of violence over the years.

7          It has to provide adequate punishment,

8  that is also an issue.

9          Deterrence is an issue, again, because

10  there is just repeated instances of violent offenses

11  over the years.

12           The public has to be protected from

13  further crimes of Mr. Drew.

14          Understand he maintains his innocence, but

15  all of that -- many of the things that he said

16  today, many of the issues that he claims and protest

17  today were presented to a jury and the jury returned

18  a verdict -- verdicts of guilty on all the counts.

19          And so I, as far as protection of the

20  public from further crimes of the defendant, that is

21  a significant factor that I have to take into

22  account given his criminal history.

23          And so as to Count One of the indictment

24  as well as Count Four of the indictment, the attempt

25  robberies, I will vary from the guidelines and fix

his punishment at a hundred and 80 months confinement, that's 15 years.

As far as the 922(g), that's Count Three, under the statute the minimum is 15 years or a hundred and 80 months, and that will be the sentence in that case. That sentence will be run concurrently with counts one and four for an effective sentence of 15 years.

As far as Count Three of the indictment, punishment will be fixed at seven years confinement or 84 months confinement with the Bureau of Prisons. That has to be swerved consecutively to counts one, three and four.

And, finally, in Count Five of the indictment, the statutory minimum for that offense is 25 years. And that will be the sentence in that case. And it has to be run consecutive to all the other offenses, counts one through four.

Making the effective sentence in this case 47 years confinement with the Bureau of Prisons.

That does accomplish all of the factors.

It is a sentence that is adequate given his background and the circumstances of the offense, it will bring about deterrence of Mr. Drew and others similarly situated. And it does protect the

public from further crimes of the defendant. It does take into account the seriousness of the offenses.

So that is going to be the sentence.

There will be no fine.

He does have to pay the one hundred dollar special assessment for each count of conviction.

And as far as supervised release is concerned, for counts one and four that's three years of supervised release.

For counts two, three, and five, there will be five years of supervised release.

Of course, all of the terms of supervised release will run concurrently.

That's the decision of the court at this time.

Have I left out anything, probation?

**THE PROBATION OFFICER:** No, Your Honor.

**THE COURT:** As far as supervised release, I don't know that will ever come into play, but he is to cooperate with the collection of DNA, drug testing and treatment under the direction of probation. Mental health counseling under the direction of probation.

That's the tentative findings of the

1  court.

2          I need to ask if there are any other

3  objections to the findings of the court with regard

4  to the sentence.

5          Mr. Biggers?

6          **MR. BIGGERS:**  Your Honor, I don't have any

7  objections.  I would like to just make sure I have,

8  you went over a lot of sentence, I want to make sure

9  that I have each one of them associated with the

10 proper count.

11         So correct me if I'm wrong, so we are --

12 for counts one, three and four 180 month concurrent

13 sentences with each other.

14         **THE COURT:**  Yes.

15         **MR. BIGGERS:**  That's for --

16         **THE COURT:**  On counts for the 922(g) and

17 the two attempts.

18         **MR. BIGGERS:**  That's correct, Your Honor.

19         **THE COURT:**  Okay.

20         **MR. BIGGERS:**  Count Two, a consecutive

21 sentence of 84 months.

22         **THE COURT:**  Seven years, 84 months, yes,

23 consecutive to counts one, three and four.

24         **MR. BIGGERS:**  And Count Five, con

25 secr1etary to all the other counts.

1          **THE COURT:**  All the other counts, yes.

2          **MR. BIGGERS:**  Twenty-five years, or three

3     months?

4          **THE COURT:**  That's right.

5          **MR. BIGGERS:**  Thank you, Your Honor.

6          **THE COURT:**  Okay.

7          **MR. BIGGERS:**  No objection from the

8     government.

9          **THE COURT:**  Ms. Robinson, any additional

10    objections?

11         **MS. JERMANN-ROBINSON:**  No, Your Honor.  I

12    think I put my position that was, by going to trial,

13    we preserved his right to litigate or appeal the

14    denial of the motion to suppress that we filed

15    earlier.

16         **THE COURT:**  I understand.

17         **MS. JERMANN-ROBINSON:**  So that's --

18    nothing further, Your Honor.

19         **THE COURT:**  Then that will become the

20    findings of the court.

21         Mr. Drew has the right to appeal the

22    decisions, the pretrial decisions as well as the

23    things that happened during trial and sentencing.

24         Assuming he wants to appeal, he will need

25    to file that notice within 14 days.

1          **MS. JERMANN-ROBINSON:**  Thank you, Your

2     Honor.

3          **THE COURT:**  Anything further?

4          **MS. JERMANN-ROBINSON:**  No Your Honor.

5          **THE COURT:**  All right, thank you for

6     coming in today, you all are excused.

7          **MR. BIGGERS:**  Thank you, Your Honor.

8          (Adjournment at 11:05 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, Lynn Dudley, do hereby certify that the foregoing 48 pages are, to the best of my knowledge, skill and ability, a true and accurate transcript from my stenotype notes of the sentencing hearing in on July 24, 2014, in the matter of:

United States of America

vs.

ROBERT DREW

Dated this 2nd day of September 2014.

_____
Lynn Dudley
Official Court Reporter
United States District Court
Western District of Tennessee